## BLAIR *vs.* STATE BANK OF ILLINOIS.

The parties to a suit may agree on the facts of the case, and suffer the court to declare the law arising on those facts. But they will not be allowed to agree on facts not in the cause, and thus obtain the opinion of the court on matters wholly disconnected with the suit.

APPEAL from the St. Louis Court of Common Pleas.

BLAIR *and* GANTT, *for Appellant.*

1. That, as assignee of H. H. Raisin & Co., he was vested with the same authority over the property and effects assigned which R. & Co. had possessed before the assignment.

2. That it was his duty, to the assignors and creditors, to make those effects as available to the extinguishment of debt as circumstances would permit.

3. That the assignors would unquestionably, under the circumstances, if reinstated in their effects, have availed themselves of the Bank and the depreciation of her notes, to pay their liabilities to her in her own paper, which had become cheaper than money.

4. That the fact that the creditors will not receive full payment does not appear in the case, and would not effect the argument if it did.

5. That, by the second section of the act of the general assembly of the State of Illinois, approved January 31, 1840, it is provided, that "The State Bank of Illinois shall, at all times, receive its own bank-bills in payment of any demand, debt, or claim due to the Bank from any individual or corporation whatever."

6. That the dividend made by defendant comes within the meaning of that section.

7. That, without such a provision in the law of the institution, the debt of the defendant to her was subject to be set off by her notes, under the general law.— See Jefferson County Bank *vs.* Chapman, 19 Johns. Rep., 322.

8. That, in this action, the court cannot consider the conduct of defendant as trustee, determine the extent of, or pass upon the manner in which he has exercised his powers, under the deed of assignment; his individual indebtedness to the Bank, on a dividend declared, an account stated, being the only subject before the court, and whether he has paid off the debt the only point to be determined.

BOGY *and* HUNTON, *for Appellee.*

By the provisions of the charter of the Bank of Illinois, the debtor has the privilege of paying in the ordinary manner, *or* in notes of that institution. Does this election extend to his assignee?—first, upon general principles; second, as to the individual case.

1. The election is a personal privilege of the debtor. As in the analagous cases of infancy, &c., he alone can claim the advantage of it; if extended to third persons, the right would' not operate to the personal benefit of the debtor, but for their advantage. This was not intended by the charter. The provision was made for the benefit of the debtor himself, and not for his creditors, or their representatives.

In this case, the assignors being wholly insolvent, as appears by their deed of assignment, the exercise of this privilege by the assignee would be simply for the benefit of the other creditors of the assignors.

2. The deed of assignment itself furnishes the guide, and marks out the duty of the trustee. As he can claim the exercise of no authority or power not there given, so a reasonable compliance with its provisions and directions furnishes him, in all things, an ample protection. The specific object for which the assets are placed in his hands is there clearly and distinctly designated.

He is to pay certain creditors, and the assignment itself is, in effect, a payment of the funds accordingly. The assignors, in the deed of assignment, did not save the right of electing to pay in the notes of the Bank of Illinois, and not having thus saved it, they have waived it, and the assignee has himself waived it by declaring a dividend in the usual manner upon the specific claim. The assignee seeks to pay the Bank in its own notes, not under the direction of the debtors, without any intimation from them, either in the deed or elsewhere.

He is the trustee of the Bank, as the other creditors. Her interests should, by him, be as much consulted as the interests of other creditors. He is the mere creature of the deed; he must look to that as his letter of instructions. His right to pay in the notes of the Bank cannot be claimed independently of the will of the debtor.

The moment the dividend was declared by the trustee, the right to the funds vested in the Bank; if they had been set apart in a box or bag, she might have maintained trover for them.

Again, what is there to distinguish this case, in principle, from the ordinary one, where one of the creditors of the party making an assignment has his notes in circulation? An individual creditor is equally bound with the Bank, under the law of set-off, to receive his own notes in payment from his debtor. Will it be contended that Blair, the trustee, after having declared a devidend in favor of Archer, for example, who was a creditor of Raisin & Co., has the right to go into the market, and buy up the paper of Archer at a discount, and offer it to him in payment of a dividend so declared? Surely not.

We have not deemed it necessary to call the attention of the Court to the well-settled principle, that the trustee cannot speculate in the trust-funds; that he ought not to be allowed to change them; and that, by his operation in this case, his compensation — his per cent. — would be increased.

We have not been able to find any authorities directly bearing upon this case. We must rely upon general principles.

SCOTT, *Judge, delivered the opinion of the Court.*

H. Raisin & Co. made an assignment of their effects, for the benefit of their creditors, to the appellant, Blair. The effects assigned were insufficient to pay all his debts. The appellee, the State Bank of Illinois, was the holder of two bills of exchange on Raisin & Co., the endorsers of which were preferred creditors under the assignment. Blair, the assignee, declared a dividend of the assets amongst the preferred creditors, of twenty-five per cent. upon their respective claims. The State Bank of Illinois having failed, its notes in circulation were forty-four per cent. below par. An action of assumpsit was instituted by the Bank against Blair. The declaration contained the common counts, and the parties having agreed upon the foregoing statement of facts, they made the right of the plaintiff to recover dependent on the solution of the question, whether Blair, the assignee, could buy the notes of the State Bank of Illinois, and with them pay the dividend due the Bank, carrying the profits arising from the transaction into the general fund, for distribution amongst the creditors at large. The court below rendered judgment for the Bank, from which Blair has appealed to this Court.

If Blair wished to know whether the notes of the Bank could have been used as a set-off to the action against him, we know of no other mode by which it could be ascertained, than by pleading them by way of set-off. But we cannot see the object in raising this question. Raisin & Co.'s effects were insufficient to pay all their debts. The agreed case admits, that the endorsers of the bills of exchange were preferred creditors under the assignment; that is, we suppose, were to have the debts for which they were liable paid before the other creditors. Now, if Blair should have purchased the paper of the Bank, and with it have paid her dividend under the assignment, and carried the profits into the trust fund, would not those profits have rightly belonged to the Bank, standing in the place of the preferred creditors? Twenty-five per cent. of the amount of the bills of exchange, converted into Bank paper at forty-four per cent. discount, would not have paid the bills, and until the Bank had been paid, at least in her own paper, she being a preferred creditor, a question as to the legality of the conversion of the funds into Bank-paper could not well arise between her and the other creditors,—that is, should not all the money, accruing under the assignment, be first applied to the satisfaction of the preferred creditors.

But be these matters as they may, we do not feel ourselves at liberty to entertain questions presented in the manner in which this is done. The parties to a suit at law or equity may agree on the facts of a case, and suffer the court to declare the law arising on those facts, but to agree on facts not in the cause, and under pretence of a suit at law, to obtain the opinion of this Court on matters wholly disconnected with the suit, cannot be tolerated. Here we are called upon, in an action of assumpsit, to declare the law governing the conduct of a trustee in the management of the trust-fund, a duty peculiarly the province of a court of equity, which, with unrestrained freedom, takes a whole transaction into consideration, from the beginning to the end, giving attention to every circumstance which can in any wise effect its opinion. The straight-laced proceedings of a court of law

wholly disqualify it for a such task, and neither the consent nor the release of errors, nor any other act of the parties, can induce this Court to permit itself to be converted into one in which questions of law may be mooted, at the will of suitors.

Appeal dismissed.