Judgment for plaintiffs in accordance with terms of the submission.

---

GEORGE WALLACE, Appellant, *v.* WILLIAM H. JONES and Others, Respondents.

Second Department, November 22, 1907.

County — taxpayer's action against supervisors — collusive audit — collusion essential to recovery — mileage of supervisors — special services.

A board of supervisors in auditing claims against a county exercises judicial functions, and if they act within their jurisdiction cannot, in the absence of fraud or collusion, be held personally responsible for their audits.

A recovery against supervisors in an action brought by a taxpayer under section 1 of the so-called Taxpayers' Act must be based upon a finding that the defendants in making audits complained of acted collusively.

Collusion implies a concerted or agreed purpose to commit fraud or accomplish a wrong, and in an action against supervisors it is not enough that the claim audited is illegal; it must also be shown that the audit was "fraudulently concerted."

Evidence examined and *held*, that supervisors in auditing their own claims for services did not act collusively, but rather in ignorance of the law or negligently.

*It seems*, that supervisors are not entitled to mileage under section 23 of the County Law for each day's actual attendance at regular or special meetings, but only for once going and returning.

*It seems*, that supervisors are not entitled to compensation for special services rendered to the county, in the absence of the record required by section 50 of the County Law, showing that such special duties were "lawfully committed" to them.

*It seems*, that when supervisors have performed special duties not authorized in the first instance, they cannot ratify their acts after service rendered.

An action by a taxpayer under section 1 of the Taxpayers' Act against supervisors for unlawfully auditing their own accounts being based upon collusion, a judgment cannot be had against them severally for moneys illegally received by each.

Second Department, November, 1907. [Vol. 122.

APPEAL by the plaintiff, George Wallace, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Nassau on the 6th day of December, 1906, upon the decision of the court, rendered after a trial at the Nassau Special Term, dismissing the complaint upon the merits.

*Thomas Young*, for the appellant.

*Frederick Ingraham* and *James W. Treadwell*, for the respondents.

Judgment affirmed, with costs, on the opinion of Mr. Justice GARRETSON at Special Term.

WOODWARD, JENKS, RICH and MILLER, JJ., concurred; HIRSCHBERG, P. J., not voting.

The following is the opinion delivered at Special Term:

GARRETSON, J.:

The plaintiff, a taxpayer of the county of Nassau, has brought this action against the three defendants, who composed the board of supervisors of that county, to recover from them the amount of certain items in the several bills of said defendants for services and disbursements as supervisors, which it is alleged were collusively audited by the said board.

This action is instituted and is sought to be maintained under section 1 of the "Taxpayers' Act," so called, being chapter 531 of the Laws of 1881, as amended by chapter 673 of the Laws of 1887, and chapter 301 of the Laws of 1892, which provides that all officers of any county may be prosecuted and an action maintained against them by a taxpayer to prevent any illegal official act or to prevent waste or injury to, or to restore and make good any property, funds or estate of such county, and in case the injury complained of consists in any board, officer or agent, by collusion or otherwise, allowing or paying or conniving at the audit of any fraudulent or illegal demand, the court shall enforce the restitution and recovery thereof if theretofore paid, and "also may in its discretion, adjudge and declare the colluding or defaulting official personally responsible therefor, and out of his property * * * provide for the collection or repayment thereof."

The complaint sets forth three causes of action, one for an illegal

audit of the bills of each of the defendants, and upon the theory that the defendants, as such board, acted collusively in auditing each and all of the bills, judgment is asked for, against all of the defendants, for the aggregate amount thereof. Such is the nature of the cause of action, and the Court of Appeals in passing upon the sufficiency of the complaint apparently deals with it in that way, and in no other. (182 N. Y. 37.) The form of the action and the judgment to be recovered therein would be the same if an audit had been alleged to have been collusively made of any illegal claim against the county, other than one presented by a member of the auditing board. It is well settled that a board of supervisors in auditing claims against a county exercise a judicial function, and if they act within their jurisdiction they cannot in the absence of fraud and collusion be held personally responsible for their audits. (*People ex rel. Oneida Valley Nat. Bank* v. *Supervisors of Madison County*, 51 N. Y. 442; *People ex rel. Baldwin* v. *Supervisors of Livingston County*, 26 Barb. 118; *People* v. *Stocking*, 50 id. 573.) The "Taxpayers' Act" but recognizes this principle and extends its application and operation. So that a recovery in this action must, among other things, be based upon a finding of fact that the defendants, in making the audits complained of, acted collusively.

The words of the act are "by collusion   *   *   *   allowing or paying or conniving at the   *   *   *   audit   *.   *   *   of any fraudulent, illegal   *   *   *   demands." The Court of Appeals has declared that the word "collusion" means "fraudulently concerted," as defined by lexicographers. Another definition is "an agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law." (1 Bouvier Law Dict. [Rawle's Rev.] 352.)

There is, therefore, involved in and necessarily implied by the term "collusion," a concerted or agreed purpose to commit a fraud or accomplish a wrong. It is not enough that the claim is illegal, but the auditing of it must also have been "fraudulently concerted" or done by collusion in order that the court "may in its discretion adjudge and declare the colluding   *   *   *   official personally responsible therefor."

Having regard to all of the evidence and the admitted facts in this case, I am unable to find that the defendants, in auditing their

several claims, did so collusively, or that their audits were fraudulently concerted. That they were ignorant of the law and acted upon the faith of misleading and erroneous precedents and were not well advised, and were perhaps negligent, is a more accurate interpretation of their conduct.

As to the illegality of the several claims of the defendants, so much thereof as relates to mileage for attendance at regular meetings of the board in excess of once going and returning, and to per diem services and expenses for "committee work" are not sustainable in law.

The "County Law" provides (§ 23*) that "each supervisor shall receive from the county compensation at the rate of four dollars per day, for each calendar day's actual attendance at the sessions of their respective boards, and mileage at the rate of eight cents per mile for once going and returning from his residence to the place where the sessions of the board shall be held, by the most usual route, for each regular and special session." By section 10 of the same act it is provided that the board of supervisors "shall meet annually at such time and place as they may fix, and may hold special meetings," and "may adjourn from time to time." I think the words "annual meeting" and "regular session" synonymous, and that a "regular" or "special" session is to be measured by its actual duration, and that each day of its duration is not a session within the meaning of the law. So that the defendants were in error in assuming that they were entitled to mileage for each calendar day's actual attendance at the sessions of their board.

The "County Law" also provides† that "each supervisor * * * may also receive compensation from the county at the rate of four dollars per day while actually engaged in any investigation or other duty which may be lawfully committed to him by the board, except for services rendered when the board is in session, and if such investigation or duty require his attendance at a place away from his residence, and five miles or more distant from the place where the board shall hold its sessions, his actual expenses incurred therein.

* See Laws of 1892, chap. 686, § 23, as amd. by Laws of 1895, chap. 480, and Laws of 1900, chap. 529. Since amd. by Laws of 1905, chap. 20, and Laws of 1907, chap. 482.— [REP.

† See § 23, as amd. supra.— [REP.

No other compensation or allowance shall be made to any supervisor for his services, except such as shall be by law a town charge."

Important and valuable services seem to have been rendered by these defendants respectively to the people of the county, during the period covered by their bills, and a large amount of money has been expended by each in actual expenses incurred therein, but the minutes of the board are barren of evidence that a single matter of investigation or other duty was committed to any of them "lawfully" or otherwise. It is contemplated by the law that boards of supervisors shall keep books of record of their proceedings. By section 50 of the "County Law" it is made the duty of their clerk to "record in books provided for the purpose all the proceedings of such board." This is for public information and for a source of authentic evidence as well. The record alone can show that a matter of special duty has been "lawfully committed" to a supervisor. It appears in the case by oral testimony that the service of each supervisor in such matters, called by them "committee work," was done in pursuance of a general understanding that each supervisor should look after the roads and other business in his own town, and report from time to time to the board, and such course was undoubtedly and in good faith pursued. But this course was not within the letter, or even the spirit of the law, and their charges for such "committee work" were not properly made or allowed.

It will be unfortunate for the defendants if this conclusion shall operate to deprive them of compensation for services rendered in good faith to the people of the county, but it is of the highest importance, and quite essential for the protection and promotion of the public interest, that at least substantial compliance with the forms and requirements of the law shall be had. I am unable to assent to the proposition of the learned counsel for the defendants, in its application to the facts of this case, that what the board had the power to authorize in the first instance it could ratify after the service was rendered, and that the audit of a bill for services actually rendered and expenses actually paid in matters relating to the county, and which were within the general supervision of the joint board, was equivalent to original authority.

I have dealt with the questions as to the legality of the charges in the defendants' bills referred to, not because their determination

is essential to the decision of the case, but that the plaintiff may, if so advised, have the benefit of express findings thereon, in the event that the judgment to be entered herein shall be subject to review.

The learned counsel for the plaintiff presents the proposition that if the court shall conclude that the plaintiff is not entitled to recover as against all of the defendants, yet a judgment may be had against them severally for the moneys illegally received by each. Such is not the nature of the action, for, as has been pointed out, the action is based upon the alleged collusion or fraudulent concert of the defendants acting conjointly as auditors, and not to recover from each defendant moneys illegally received by him from the county.

For the foregoing reasons I am constrained to the conclusion that there must be judgment for the defendants dismissing the plaintiff's complaint upon the merits, with costs.

---

Commonwealth Trust Company of New York, Respondent, *v.* John W. Young, Defendant, Impleaded with Pierre Calvet Rogniat, Appellant.

First Department, December 6, 1907.

**Principal and agent — when third party bound by limitation of author- ity — when unauthorized sale of bonds by agent does not pass title.**

One who deals with an agent, knowing him to be such, is bound to know the limitation placed upon his authority.

One who with knowledge contracts with the agent of a trust company to pro- cure underwriters for bonds of a proposed ship-building syndicate and to pro- cure the public issue of the bonds, or their withdrawal from public issue by the underwriters, in consideration of certain commissions to be payable in bonds, does not acquire a good title to "interim certificates" representing the bonds by a transfer thereof from the agent to whom they were delivered to carry out the arrangement, if the transferee has failed to perform his part of the agreement.

The same is true as to "interim certificates" purchased by him from the agent, for he had knowledge that they were delivered to the agent for the specific purpose of carrying out the scheme, and could not be sold for any other purpose.

Appeal by the defendant, Pierre Calvet Rogniat, from a judg- ment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 17th day of