WILLIS WILLIAMS, Respondent, v. R. W. VAN DEUSEN, et al., Appellants.

Kansas City Court of Appeals. January 26, 1920.

1. **TAX BILLS:** Work not Competed Within Time Prescribed by Ordinance: Delay Caused by Injunction: Collusive Injunction Proceedings. In a proceeding to cancel tax bills issued for work done under a contract alleged not to have been completed within the time prescribed by the ordinance authorizing the work, the defense that the work was delayed by an injunction suit against the contractor which ground for delay the ordinance sanctioned, will not avail where it is shown that the contractor, after the contract had been entered into and the work commenced, *pro-*

*cured* a property owner to institute the injunction suit, making the contractor and the city defendants in order to ascertain the validity of the ordinance in question, as the delay caused by the injunction is attributable to the act of the contractor.

2. ————: Injunction: Moot Case. Although there is an apparent conflict of interests in a suit brought by a property owner against a contractor and a city to enjoin further work on the ground that the ordinance authorizing the improvement is invalid, where it is shown that the contractor himself, who was desirous of testing the validity of the ordinance, procured the property owner to bring the suit, there is no real controversy between the plaintiff and the defendants in the injunction suit, the contractor in reality being plaintiff and defendant.

3. ————: Real Party in Interest. In the absence of a showing that the grantor of the plaintiff would have been estopped from questioning the effect of the injunction proceedings against the contractor the fact that such grantor made an outright gift of the property to plaintiff so that as a property owner he might bring the present suit is no defense, as the plaintiff, being the actual property owner, is the real party in interest.

Appeal from Buchanan Circuit Court.—*Hon. Thos. B. Allen,* Judge.

AFFIRMED.

> *Graham & Silverman* for respondent.
> *John E. Dolman* for appellants.

TRIMBLE, J.—This is an action in equity to cancel a series of five installment tax-bills, for paving a highway in St. Joseph, assessed as liens against a lot alleged to be owned by the plaintiff. The chancellor's decree directed the bills to be cancelled and the apparent lien removed; whereupon the holder of said bills, A. W. Van Hafften, appealed.

The proceedings under which the improvements were authorized and the contract let are those which were involved in the case of McQueen v. Van Deusen, 169 Mo. App. 492. That suit was instituted after the contract had been signed and the work begun; but, upon its institution and during its pendency, all work ceased

and nothing was done till after the final determination of that case in this court, whereupon the contractor proceeded to finish the work. The question involved in that suit was the validity of the ordinance authorizing the improvement of a highway which, although composed of parts of various streets dedicated under different names, was in reality, on account of the topography of the territory, one continuous highway and thoroughfare, so recognized and treated by the public and the city in its use and control of the same for more than ten years, the contention being that the city could not in one proceeding improve, as one continuous highway, a thoroughfare made up of parts of several streets dedicated under different names.

A number of grounds were urged in the present action against the validity of the bills, but as only one of them was upheld we need not consider the others. That one was that the work was not completed within the time prescribed by the ordinance.

The contract was awarded September 24, 1914, and gave the contractor 130 days in which to complete it. The contract was signed on September 30, 1914, work was begun October 3, 1914, but upon the institution of the injunction suit of McQueen v. Van Deusen aforesaid, on October 7, 1914, the work ceased until that case was finally determined in May or June, 1915. Thereupon work was resumed and the improvement completed about November 1, 1915.

Pursuant to section 8840, Revised Statutes 1909, the ordinance authorizing the work contained a provision saying the work was to be completed in 130 days after the contract was awarded, but providing that "the time fixed for the completion hereof shall be extended for such length of time as the contractor may be actually and necessarily prevented from pursuing said work by reason of bad weather, a general strike . . . or injunction against him.

The answer set up the injunction in the McQueen case as a defense to charge that the work was not done

in time. The reply charged that the injunction "was procured at the instance and through the instrumentality of said contractor and for the purpose of stopping said work, and said injunction so procured does not operate to extend the time."

The chancellor found that after said contract had been entered into, the contractor procured, instigated and caused said injunction suit to be brought in the name of Lizzie McQueen to prevent the performance of the work, and that said contractor maintained said suit through all its stages; that he had no legal interest in said injunction suit as he had already entered into a valid contract prior to the institution of the said suit "and the sole purpose of said Van Deusen in procuring and maintaining said injunction suit was to obtain a judicial determination of the question as to the validity of the said ordinance and contract, which question was in effect a moot question, since the suit was not brought for the purpose of avoiding the contract, but merely to find out and determine whether the contract was good or not—a decision either way fully satisfying the purpose of the suit; and that but for the interference and main-tenance on the part of the . . . (contractor) . . . said injunction would not have been brought."

The court further found that "the time in which said work was required to be completed, as required by said contract aforesaid, was not extended for the period during which said injunction suit was maintained as aforesaid and that by reason thereof said work was not completed within the time provided for in said con-tract, and that because of such failure to complete said work within the time provided in said contract the tax bills described in plaintiff's petition are null and void and of no force and effect."

There is no question but that the contractor did instigate and maintain the McQueen suit. It was not done, however, in any corrupt or fraudulent motive, nor for the purpose of securing delay. The record discloses that it was the general opinion in legal circles that the

ordinance was void because it sought to combine parts of several streets into one improvement. And the purpose of the McQueen suit was to find out whether the ordinance, or such an ordinance, was valid. It was a friendly suit brought in the name of a property owner, against the contractor and the city to determine the validity of such a proceeding, it being a public question in which the city and contractors generally therein were interested in having settled, several other similar ordinances having been passed under which contractors had refused to bid on account of said question as to their validity. The city through its city counsellor, defended the suit both in the trial and appellate courts. No extension was formally applied for nor was any granted by the legislative authorities of the city. The contractor merely consulted a member of the St. Joseph Bar who informed him that the way to test the question was to have a property-owner bring a suit, and thereupon the contractor secured for the attorney the name of Lizzie McQueen and the suit was brought, the city counsellor defending it and the contractor paying the attorney his fee for carrying on the case.

Appellant contends that the facts do not bring the McQueen case within the strict definition of a moot case. If we understand his position, it is that as Lizzie McQueen had a *legal right,* as a property-owner, to *question* the validity of the ordinance, and the city was interested in *upholding* its validity, there were antagonistic interests present in that case and on opposite sides of a *real* and important public question involved therein; and that the presence of these antagonistic interests over a *real* question was sufficient to keep the case from being a moot one, even though such property-owner's interest would not have been asserted but for the instigation and support of the contractor. Appellant's position is, furthermore, that there was no fraud, collusion, nor purpose to secure delay in the prosecution of the work.

The chancellor did not find the McQueen case to be strictly a moot case but that it was so "in effect." And the question is not whether the facts bring it within the strict legal definition of a moot case, but whether they are such as to give rise to practically the same results as if it were. It is beyond doubt true that a real question existed, but was there a real and substantial *controversy* between the parties, plaintiff and defendant, in the McQueen case? Was it instituted and maintained to redress a grievance of plaintiff, or merely to settle a question of law for the benefit of the two defendants and upon which they, and they alone, desired information? No interruption of the work was brought about through any attempt upon Lizzie McQueen's part to assert and protect her rights, as no such suit would have arisen but for the procurement thereof by the contractor. He put forward the plaintiff to make a fight nominally in her own behalf but in reality it was he, himself, fighting himself to obtain a decision upon a question which he, and perhaps his co-defendant, wanted settled; and under such circumstances, who but the contractor himself was responsible for the delay brought about by that suit?

In Lord v. Veazie, 8 How. (U. S.) 250, 254, Mr. Chief Justice TANEY uses these words:

"It is the office of courts of justice to decide the rights of persons and of property, when the persons interested cannot adjust them by agreement between themselves—and to do this upon the full hearing of both parties. And any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is *no real and substantial controversy* between those, *who appear as adverse parties to the suit,* is an abuse which courts of justice have always reprehended, and treated as a punishable contempt of court." (Italics ours.)

It is true, in that case the plaintiff and defendant had the *same* interest and hence there was no real

*conflict* of interest between them; while in the McQueen case there was a conflict of *interest* between the *ostensible* plaintiff and the defendants, but there was no real *controversy* between them. The contractor was in reality the plaintiff and he was also the defendant. In other words the McQueen suit was a sham, not because there was no conflict of *interest* between the apparently opposite parties had the plaintiff therein chosen to assert her interest, but because there were, in fact, no contesting parties, the plaintiff therein being none other than the contractor himself masquerading as McQueen.

In the case of Meeker v. Straub, 38 Mo. App. 239, 243, the *ostensible* plaintiff was the widow of a decedent against the administrator of his estate, but she was procured by the administrator to bring the suit for purposes of his own. The court remarked in that case—

"Suits contemplate adversary parties, although amicable suits may be brought to determine the respective rights of the parties thereto. When a suit is brought with a view of affecting the rights of third parties, and it is apparent that that is its sole object the suit ceases to be adversary and becomes collusive. No court should lend its aid to such a proceeding, least of all a court of equity. The administrator in this case, with the best motives it is true, having paid out funds of the estate in his hands for these mortgages, and finding himself involved in difficulties, owing to the discovery of other preferred claims, advances the plaintiff to make this fight nominally in her behalf, but in reality in his own, and, in order to enable her to do so, becomes even her security for costs."

In Ward v. Alsup, 46 S. W. 573, 574, the court, in passing upon what is collusive actions, said—

"It is not sufficient that the parties be real and not fictitious, but the *controversy must be real* and not *pro forma;* nor is it sufficient that the facts exists as they are set out in the action, nor that the complainant has a cause of action but, beyond these, the question arises:

Is the suit prosecuted to *redress the grievance of the plaintiff*, or to affect third perons, who may be interested in the same question already pending in another suit, and which is the primary and real object of the proceeding? If the latter, the suits should be dismissed. Courts cannot be used for the purpose of deciding even real questions in *pro forma* suits; especially when the object and purpose is to affect important litigation between other parties. If so, the most complicated and difficult questions of law, and the constitutionality of statutes, might be settled by the court upon such *pro forma* proceedings, when no real controversy or adverse interests exists, and no proper examination of the important questions is made by counsel or the court." (Italics ours).

In most, if not all, of the above cases the *interests* of plaintiffs and defendants were the same, while in the McQueen case the *interest* of the plaintiff so far as concerns her legal right when self asserted, was not the same as that of the contractor, and, therefore, as intimated above, the McQueen case may not come within the strict definition of a moot case, which "is one which seeks to determine an abstract question which does not arise upon existing facts or rights." [Adams v. Union R. Co., 42 Atl. 515.] However, if the definition given in Ex Parte Steele, 162 Fed. 694, 791, be correct, the McQueen case comes very nearly within that category. It is there said that—"a moot case is one which seeks to get a judgment on a pretended *controversy when in reality there is none*, or a decision in advance about a right *before it has been actually asserted and contested,* or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy."

There is no question but that an honest, bona-fide effort was made in the McQueen case to have the ordinance declared invalid; and no contention is made that the suit was not pressed earnestly and faithfully; but the objection to cases brought ostensibly in the name of

one person but in reality by another against himself, and before any real controversy has arisen, does not arise from what was or was not done in the way of presenting the legal questions involved, but, as stated in Ward v. Alsup, supra, inheres in the *possibility* of the most complicated and difficult questions of law being settled in a case wherein the *real* and *acting* parties are all on one side and before any real *controversy* has arisen or exists. It is the *opportunity* and danger in such cases, and not what is done in any particular one, that leads the courts to place the ban upon them.

But without regard to whether the McQueen case can be regarded as strictly a moot case or even a collusive action, which last-mentioned term connotes or includes the idea of a wrongful purpose, still we think that inasmuch as it was instigated and carried on by the contractor himself, he is not entitled to be credited with the time caused by the delay arising therefrom. Undoubtedly the injunction was self procured, and, therefore, no extension which the contractor derived therefrom can be set up in his own favor against another. [Multnomah County v. First Nat'l Bank, 82 Pac. 23, 25; Same v. Same, 85 Pac. 78, 80.] The contractor, in obtaining the injunction, knew it would cause delay, and must be presumed to have intended the natural consequences of his own act. In other words, he himself intentionally caused the delay and, having caused it, cannot take advantage of his own act. In McLeod v. Ganius, 31 Neb. 1, a building contractor was not given the benefit of time covered by a strike of his employees which was caused by his own wrongful and voluntary act. And in Mahoney v. Smith, 116 N. Y. Supp. 1091, a voluntary lookout by a contractor against his employees was held to be no valid excuse for failure to complete his work within the contract time even though there was a clause in the contract making a strike a valid excuse for delay. In McLane v. Elder, 23 S. W. 757, it was held that a party to a contract, who causes a delay in the time of its performance, cannot claim that

Williams v. Van Deusen.

time was of the essence of the contract and that he was no longer bound by the contract because of the delay. While the statute and the contract both provide that delay caused by injunction shall extend the time, this does not mean that the contractor may instigate and maintain one and then take advantage of the delay himself has thus caused. No extension was granted by the legislative authorities of the city, and the rights of property-holders not parties to the contract are involved. It is well settled that where the improvement is not constructed within the time alleged and the time is not extended, the tax-bills are void.

It is urged that the Bowen Improvement Company is the real party interested in the present suit and that the plaintiff's ownership of the lot, against which the taxbills were assessed, was conferred upon him in order that he might maintain the suit and escape a plea of estoppel which would have been set up against the land company. There is no question but that the Bowen Improvement Company did make a present of the lot in question to the plaintiff who is a colored man; that the lot has a "hole in it" and is of little value; that the deed was executed and delivered the day before the present suit was brought; but the plaintiff accepted it and the Company says it was an absolute conveyance and that it has neither interest nor claim in the lot. In other words, both grantor and grantee assert the validity.

However, it is not shown in anyway how the Bowen Land Company would have been estopped from maintaining this suit had it chosen to bring it in its own name. It nowhere appears that it induced the contractor to do or not to do anything, or to change his petition in any degree. Nor is it disclosed that the Bowen Improvement Company knew that the contractor had himself procured the injunction until long after the institution of the present suit. In other words, it does not appear that the Bowen Improvement Company had any knowledge of such fact during the time the Mc-

Queen injunction suit was pending or during the time the work was being done. We see no reason therefore for considering the motive the Bowen Land Company had in conveying the lot in question to the plaintiff and having him to bring the suit instead of bringing it itself. Had the case gone the other way the necessity for such consideration might have arisen, but, as to this last, we do not express an opinion.

The judgment is affirmed. All concur.

### On Motion For Rehearing.

TRIMBLE, J.—Appellants' point that the judgment rendered by the chancellor herein cannot be upheld because it is a collateral attack upon the judgment in the McQueen case, was considered and regarded as not available or applicable, but through inadvertence no mention of it was made in the opinion.

We do not regard this case as making any attack upon the McQueen judgment. Hence no question of collateral attack is involved. No relief against that judgment is sought or granted. The McQueen case decided one thing, the present case determines an entirely different thing; the former involved only the legality of the city's authorization of the improvement, the latter passes upon the legality of the contractor's performance of the work. This last was not in issue in the McQueen case and could not have been made an issue since at the time it was tried performance of the work was not accomplished, nor had the time therefor expired. If it be said that, in so far as the decree herein finds that the McQueen case was a sham, it is a collateral attack therein, then it can be said in answer that the plaintiff herein was not a party to the McQueen case nor in privity with anyone who was or should have been a party. Hence his right to show, in this case, that the McQueen case was in law collusive, is not impaired.

The motion for rehearing is overruled. All concur.