# W. E. BOWEN IMPROVEMENT CO., Respondent. v. A. W. VAN HAFFTEN, Appellant.

### In The Kansas City Court Of Appeals, March 6, 1922.

1. **MOOT CASE: Defined: Mere Fact that Suit is Friendly Will not Prevent Determination Where Object is not to Determine a Question of Abstract Right not Resting on Existing Facts.** A moot case is one which seeks to determine an abstract question which does not rest upon existing facts or rights, and the mere fact that a suit is a friendly one will not prevent a determination thereof where the object is not to determine a question of abstract right not resting on existing facts or rights.

2. **WORDS AND PHRASES: Word "Collusion" Defined.** Collusion is a secret concert of action between two or more for the promotion of some fraudulent purpose.

3. **JUDGMENT: Collusion: Annulment: To Warrant Annulment of Judgment at Instance of Stranger Incidentally Affected Proof of Collusion Should be Very Clear.** Even in a case of strict collusion the proof should be very clear to induce the court to annul a judgment at the instance of strangers incidentally affected by decision of the question involved.

4. **———: Fraud: To Vacate a Judgment for Fraud the Fraud Must Exist in the Procurement Thereof.** Equity will not vacate a judgment for fraud, unless the fraud is extrinsic or collateral to the matter involved and existed in the *procurement* of the judgment.

5. **———: Temporary Injunction Will not be Set Aside on Ground of Collusion as Against Innocent Third Persons.** Where paving contractor dubious as to validity of ordinance under which his contract had been executed, upon advice of his counsel intended to abandon same and forfeit bond to secure performance, but on suggestion of city official, instituted suit against himself and city to test validity of ordinance, and the court in upholding validity of ordinance issued a temporary injunction excusing contractor's delay in completion of work within time required by contract, held the temporary injunction will not be set aside on an action in equity on ground of collusion for purpose of defeating payment of tax bills in hands of strangers to suit and who had no knowledge that contractor instigated the same.

Appeal from the Circuit Court of Buchanan County.
—*Hon. Lawrence A. Vories,* Judge.

REVERSED.

*Eugene Silverman,* and *Strop & Mayer* for respondent.

*W. B. Norris* and *John E. Dolman* for appellant.

TRIMBLE, P. J.—A proper understanding of this case requires a preliminary statement of the circumstances of its origin.

By reason of the topography of the country in a certain section of the city of St. Joseph it became necessary to pave a portion of several connected streets combined into one continuous highway, and an ordinance for this purpose and authorizing such work was duly passed, and the proper steps were taken resulting in the letting of a contract to one Van Deusen for the paving of the highway thus formed. The contract and bond between the city and the contractor required the work to begin within ten days and to be completed within 130 days from the awarding of the contract, the time, however to be extended for such period as the contractor was actually and necessarily prevented from work by injunction, etc.; and the bond provided that in case of failure to perform said contract, the contractor should forfeit $500 as liquidated damages.

The contractor, after beginning the work, learned that it was the wide-spread opinion in legal circles that the ordinance was invalid because it attempted to authorize the improvement of parts of different streets as one, and, upon consulting a former city counsellor, was advised that the ordinance was void. He thereupon consulted his attorney and was advised to forfeit his bond of $500 rather than take the chances of losing the expense of the entire job, about $25,000.

. He was before the Board of Public Works of the city
for this purpose, when the city engineer suggested to
the contractor's attorney that a test case be brought to
determine the validity of the ordinance. It does not
appear in the evidence of the case now at bar just what
officers of the city were consulted, but merely that as
"a result of the conference between the contractor and
the city," it was arranged that a suit should be bought
by a property owner as a test case. And thereupon the
case of McQueen v. Van Deusen was brought in which
a temporary injunction was issued restraining the con-
tractor from further prosecution of the work until the
validity of the ordinance could be determined. The case
was finally adjudicated, the validity of the ordinance up-
held and the temporary injunction dissolved. [See Mc-
Queen v. Van Deusen, 189 Mo. App. 492.]

Thereafter the work was completed, but of course
not within the time provided in the contract, to-wit,
130 days, unless the time in which the temporary in-
junction in the McQueen case was in force could be
counted out of the period.

About six months after the work was completed, the
suit of Willis Williams v. Van Deusen was brought to
cancel a tax-bill issued for the improvement against
a lot standing in the name of Williams, and the chancellor
cancelled the tax-bill on the ground that the work was not
completed in time, the time the injunction was in force
not being allowed any effect for the reason that the con-
tractor was the real plaintiff in the case against him-
self and was therefore himself responsible for the de-
lay. This judgment was affirmed in this court, the
author hereof writing the opinion. [See Williams v.
Van Deusen, 219 S. W. 395.]

That opinion, however, overlooked or failed to grasp
the fact that this was collaterally attacking, not the judg-
ment in the McQueen case establishing the validity of
the ordinance, but the preliminary judgment creating
the temporary injunction. Consequently, on *certiorari,*

the Supreme Court quashed the decision and judgment in the Williams case. [See State ex rel. Van Hafften v. Ellison, 226 S. W. 559.]

The case now before us for review is a proceeding in equity brought for the purpose of *directly* attacking the preliminary judgment creating the temporary injunction in the McQueen case, so that upon elimination of it, the defense that the work was not done within the 130 days can be interposed to defeat the tax-bills. The present action has its origin in a remark made by the Supreme Court in the *Certiorari* case, 226 S. W. l. c. 563, that: "The city would be entitled to a hearing in any suit to vacate the orders; (those establishing and continuing in force the temporary injunction), and if they were procured by Van Deusen, and the city, instead of conniving at his act, was ignorant of it, a remedy by a suit to annul the orders and thereby prevent Van Deusen from deriving an extension of time from them, would have been available to the city; and that remedy is available to any property owner, including Williams, whose rights are affected by the extension."

The case at bar was heard by the chancellor and a decree was entered setting aside or annulling the judgments creating and continuing in force the temporary injunction in the McQueen case. Doubtless he did so because he felt bound by what was said in the decision in the case of Williams v. Van Deusen, 219 S. W. 395, especially in paragraph 2, page 398. To the extent that he did so, no responsibility should rest on him for the disposition he made of the case.

The fundamental and crucial reason impelling the author hereof (and the court) to the conclusion reached in the Williams case is to be found in the second column of page 398 of said decision. That was, that although there was no actual fraud nor improper motive in the bringing of the McQueen suit, and although there was an honest, bona-fide, earnest and faithful effort on both sides to have the question correctly settled, yet the op-

portunity and danger afforded for fraud and imposition in allowing a suit to be brought by one, in the name of another, against himself, is so great that it should not be permitted to have or accomplish any result, and that "without regard to whether the McQueen case could be regarded as strictly a moot case or even a collusive action, which last-mentioned term connotes or includes the idea of a wrongful purpose, still we think that, inasmuch as it was instigated and carried on by the contractor himself, he is not entitled to be credited with the time caused by the delay arising therefrom."

The principle and reason stated in the foregoing is good and to it we adhere as a general proposition. But upon a more mature and thorough consideration of the *circumstances to which it was there applied,* aided by what is perhaps a fuller and more lucid presentation of those facts in the present case, we are of the opinion that, aside from the question of collateral attack mentioned above, the decision in the Williams case overlooked the broad *equities involved in the peculiar and unquestioned circumstances of the case.*

In the case at bar it still is beyond question that while the contractor did instigate and maintain the McQueen suit, yet it was not done in any corrupt or fraudulent motive, nor for the purpose of securing delay; that there was a public question as to the validity of such an ordinance which the city was interested in having settled because other ordinances of a similar character had failed to attract bidders on this account. It is conceded there was no actual fraud in the bringing of the McQueen suit, but the contention is that since the contractor instigated and maintained the suit, there was legal or constructive fraud and collusion, which, without regard to any other fact or circumstance, calls for the annulment of the judgment.

It is manifest from the evidence in this case that the contractor was in the act of throwing up his contract and forfeiting the $500 liquidated damages there-

for when it was suggested by a minor city officer that a suit be brought to test the matter. Now, it does not appear that the city knew the contractor *maintained* the McQueen suit, but it certainly knew that he caused or *insisted* its bringing, and the city was also a defendant therein, and through its city counsellor defended the action. So that the case was not merely a suit by the contractor against himself, but was against the city also and both sides were honestly and stoutly maintained. In other words, it was in reality an action between the contractor and the city brought *in good faith* to settle the question of the validity of the ordinance, a question of great public interest. Whether the city knew the contractor was paying plaintiff's attorney or not, it knew, as did every one else connected with it in interest or otherwise, that it was a friendly suit to test the validity of the ordinance. There was a concrete case of fact or right at the bottom of the suit. The contractor had already entered into the contract it is true, but he could also refuse to perform the contract by paying the stipulated damages; and the city was interested in having the reason for this course removed. There was, therefore, a proper subject of inquiry before the court for determination which could have been submitted by agreement of the parties. [Blair v. State Bank of Ill., 8 Mo. 313, 315.] "A moot case is one which seeks to determine an abstract question, which does not rest upon existing facts or rights. Where a concrete case of fact or right is shown, we know of no principle or policy of law which will deprive a party of a determination, simply because his motive in the assertion of such right is to secure such determination. It is a matter of common practice." [Adams v. Union Ry. Co., 44 L. R. A. 273, 276. The mere fact that a suit is a friendly one will not prevent a determination thereof where the object is not to determine a question of abstract right not resting on existing facts or rights. [State v. First Catholic Church, 128 N. W. 657.]

Collusion is a secret concert of action between two or more for the promotion of some fraudulent purpose. [Belt v. Blackburn, 28 Md. 227; 235.] " 'Collusion' impiles a concerted or agreed purpose to commit a fraud or accomplish a wrong." [Wallace v. Jones, 107 N. Y. Supp. 288, 290.] It "implies the existence of fraud of some kind, the employment of fraudulent means, or lawful means for the accomplishment of an unlawful purpose." [Dickerman v. Northern Trust Co., 176 U. S. 181.] Consequently it would seem that the McQueen case was not in the strict sense of the term a collusive action. It may be that the court in the McQueen case was deceived by being led to think that a property owner was calling for a test when in realty it was the contractor and city asking for it, not through any wrongful motive, but for an honest purpose. This may or may not have justified the court, had it known the facts, *in refusing to adjudicate* the question presented, but since it *did* adjudicate the question, will the same circumstances justify the court in the present case in *annulling* what was done therein, namely, the temporary injunction in the McQueen case? Even in a case of strict collusion, the proof should be very clear to induce the court to do this at the instance of strangers to the suit though incidentally affected by the decision of the question involved. [Cochrane v. Deener, 95 U. S. 355.] In practically all of the cases cited to us as supporting the contention that the judgment should be annulled, the question adjudicated by the judgment sought to be set aside was one where no concrete case of fact or right was made, or it was a mere abstract question not resting upon existing facts or rights, and the purpose in securing the judgment was an improper one. In many, if not all, of the cases cited in reference to collusive action, the court, in the collusive action, merely refused to adjudicate the question presented. But even, if the court in the McQueen case might have refused to adjudicate the question presented had it known that the suit was instigated and maintained by the contractor, ought the court in

the present case, under the circumstances herein shown annual what was done in the McQueen case with reference to the temporary injunction? Equity will not vacate a judgment for fraud, unless the fraud is extrinsic or collateral to the matter involved in the former trial. It must be in the *procurment* of the judgment. [Wabash R. Co., v. Mirrelees, 182, Mo. 126, 140-41; Hamilton v. McLean, 139 Mo. 678.] "By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy." [Electric Plaster Co. v. Blue Rapids, etc., Township, 81 Kan. 735; Garrett Biblical Institute v. Minard, 82 Kan. 338.]

In what is herein above said it is not meant to imply that, if the suit was in good faith, the rights of the property owner can be disregarded, or that, regardless of the consequences to the property owner, there must be actual fraud as distinguished from constructive fraud before the judgment can be set aside. That question need not be passed on in the circumstances of this case as we view them, but the facts herein stated are not without their bearing upon the question of whether the power of equity to annul such a judgment should be exercised. In this case there are other equities affecting the matter which should prevail even though ordinarily, if the rights of the contractor himself were involved, he might not be allowed the benefit of the extension he thus obtained.

But a somewhat different situation presents itself here. In this case the defendant Van Hafften, owner of the tax-bills and not the contractor, is the one upon whom the penalty falls if it is imposed. The record discloses that he knew nothing of the McQueen suit having been instigated and maintained by the contractor; that he came to St. Joseph after that suit had been tried and while it was pending in this court; that upon the faith of the judgment rendered therein he advanced the money by which the contractor was enabled to finish the work,

and for thus advancing the money and financing the job, Van Hafften was to have and got the entire issue of the tax-bills. We note the contention that Van Hafften should be considered as a mere partner of Van Dausen because there was a further agreement that if there had been any profits on the job they were to be divided, but this additional arrangement is not sufficient, under the circumstances, to charge Van Hafften with notice of what Van Deusen knew, since it was in reliance upon the McQueen judgment that Van Hafften purchased the tax-bills; Nor does the fact that Van Hafften inquired of Van Deusen's attorney concerning the tax-bills charge him with notice of the fact that the contractor had instigated and maintained the McQueen suit, because the record shows that said attorney knew only that there was a friendly suit instituted to determine the validity of the tax-bills. He was not the attorney for the plaintiff in the McQueen suit and knew nothing about how McQueen was induced to lend her name as plaintiff.

Plaintiff in the case at bar was not prevented in any way from knowing of the friendly suit nor its object. It paid no attention either to the proceeding to pave the proposed highway or to the suit to ascertain the validity of the ordinance. No actual damage or injury to its rights was brought about by the delay thus caused in the work by the McQueen suit, save the legal right to have the work done in the stipulated time and to question the proceeding if same was not so done.

Under all the foregoing circumstances ought a court of equity to set aside the McQueen judgment in support of that bare legal right in a case where the suit involving the judgment sought to be affected was brought in good faith and with no improper motive, and where, as in the present suit, the only person to suffer will be the man who advanced his money for the tax-bills on the faith of that judgment and who was wholly unaware of anything affecting its validity? After a thorough consideration of the matter, upon a fuller and more lucid

presentation of all the facts and the fundamental equities bearing upon the case, we have come to the conclusion that it should not be done.

Accordingly the judgment is reversed. All concur.