# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

# STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1889.

THE STATE v. SNYDER, *Plaintiff in Error.*

1. **Criminal Law:** PRACTICE : DISCRETION OF JURY. A jury trying a person indicted under Revised Statutes, 1879, section 1263, has an alternative or discretion as to the kind and extent of the punishment to be inflicted, and therefore has the right to assess and declare the punishment in their verdict, and it is the duty of the court to render a judgment according to such verdict. It has no power to set it aside and grant a new trial in opposition to the will of the defendant.

2. ———— : ———— : POWER OF COURT TO FIX PUNISHMENT. The court has power to assess and declare the punishment where the jury find a verdict of guilty but fail to agree upon the punishment or assess such as is not authorized by law. Where the punishment assessed by the jury is above or below the legal limit, the court must fix the punishment, in the first case at the highest limit allowed by law, and in the second case at the lowest limit. The court may, also, diminish the punishment assessed to the minimum provided by law, where it is greater than ought to be inflicted. These are the only cases in which the court has the power to alter the verdict of a jury in a criminal case.

| | |
|---|---|
| 98 | 555 |
| 100 | 493 |
| 98 | 555 |
| 119 | 424 |
| 98 | 555 |
| 137 | 317 |

( 555 )

The State v. Snyder.

3. ———— : JEOPARDY. Under the common law and under the constitutions of 1820, 1865 and 1875, no man can be brought into jeopardy more than once for the same offense.

4. ———— : ———— : WHAT CONSTITUTES. When a jury is empanelled and sworn, the indictment being sufficient and the court possessed of jurisdiction, the jeopardy of the defendant begins.

5. ———— : MANDAMUS. The trial judge in a criminal case may be compelled by *mandamus* to perform his duty of entering judgment on the verdict of a jury and passing sentence accordingly.

6. Practice: NEW TRIAL: PRESUMPTION. Where a court sets aside a verdict and grants a new trial of its own motion, it will be presumed that such action is in opposition to the will of the defendant.

7. ———— : BILL OF EXCEPTIONS. Where a trial judge refuses to sign a bill of exceptions and certifies the same to be untrue, but permits it to be filed, such permission will be regarded as countervailing his denial, and the bill will be presumed to be true.

8. ———— : ————. Where the affidavits filed with a bill of exceptions signed by bystanders fully support the bill, and there are none filed *contra*, the certificate of the trial judge that the bill is untrue, must be held for naught.

9. Criminal Law: JUDGMENT. A judgment and sentence must always precede the punishment in order that the latter may be legally inflicted.

10. ———— : ERRONEOUS JUDGMENT. If a defendant, on an erroneous judgment, submits thereto and performs the sentence of the law, he cannot again be punished.

11. ———— : ———— : CASE ADJUDGED. A defendant was convicted by a jury and his punishment assessed at six months' imprisonment in a county jail. The court, of its own motion, set aside this verdict and without warrant of law, granted defendant a new trial. On the second trial, defendant objected to the introduction of any evidence and pleaded his former conviction. This plea was overruled and a second jury assessed his punishment at five years in the penitentiary. Defendant was confined until his appeal from the second trial was determined, which was long after the expiration of the original term as assessed by the jury. The supreme court reversed the judgment and discharged the defendant.

*Error to Jackson Criminal Court.*—HON. HENRY P. WHITE, Judge.

REVERSED.

*T. H. McNeil* and *A. W. Farrar* for plaintiff in error.

(1) The principle of law, that no person shall be subject for the same offense to be twice put in jeopardy of life or limb, is too well established and too near an axiom in our system of jurisprudence, to be overridden by any court at its will. It is a principle characteristic of our laws and institutions, and one which distinguishes our system from that of the barbarous nations. It was early recognized as a part of the common law of England, it was embodied in the constitution of the United States, and it appears with varied phraseology in nearly all of our state constitutions. "It is a universal maxim of the common law of England that no man is to be brought into jeopardy of his life more than once for the same offense." 4 Bl. Comm. 336; *U. S. v. Gilbert*, 2 Sumner, 39; *McFadden v. Commonwealth*, 23 Pa. St. 12, 15; *People v. Conway*, 2 Comst. 17; *State v. Norvell*, 2 Yerger, 24; *State v. Hays*, 78 Mo. 600. (2) None of the contingencies which entitle the state to a re-trial existed in this case. The sufficiency of this indictment has never been questioned, and, indeed, as the evidence shows, it was under this very indictment that the prisoner was re-tried, convicted and sentenced in the last trial. No necessity arose during his second trial or before or after it that gave the state a right to a re-trial. In his second trial on September 16, 1887, he was put upon trial before a court of competent jurisdiction, upon an indictment sufficient in form and substance to sustain a conviction and a jury was charged with his deliverance by being empanelled and sworn to try him. This constituted legal jeopardy and is a bar to any subsequent trial. Cooley's Const. Lim. [5 Ed.] p. 400; 1 Bish. Crim. Law [6 Ed.] secs. 1015, 1045; *State v. Hays*, 78 Mo. 600, 606. (3) The term having passed

The State v. Snyder.

at which the 'plaintiff in error was convicted, and the verdict set aside without the court rescinding its order or rendering judgment on the verdict, no judgment can now be rendered thereon. *Ashby v. Glasgow*, 7 Mo. 320; *Pockman v. Meatt*, 49 Mo. 345, and cas. cit. But even should judgment be entered against him now, his sentence of six months must date from September 15, 1887, the day of his conviction ; and so he has long since served out that sentence should it be imposed, and is entitled to his liberty. We therefore request the discharge of the prisoner.

*John M. Wood*, Attorney General, for the State.

Sherwood, J.—The crime for which the defendant was tried was an assault with intent to ravish a female child of eleven years of age. The trial resulting in a verdict being returned by the jury in these words, " We the jury find the defendant guilty, and assess his punishment at six months in the county jail. P. H. Packard, Foreman."

This verdict the court, of its own motion, set aside, and entered an order forever disqualifying the jurors who composed the panel from sitting as jurors in said court.

Afterwards the defendant was again put upon trial, whereupon he pleaded his former conviction, proved it by the record, objected to any evidence being introduced by the state, because of such former conviction, and upon this objection being overruled and evidence for the state being introduced, elicited, by cross-examination of the state's witnesses, evidence tending to prove that defendant was being tried for the same offense of which he had formerly been convicted in the same court as aforesaid ; but the trial court disregarded said plea of *autrefois convict*, and refused to instruct the jury upon that point as asked so to do by the

defendant, to the effect that if the defendant had been tried and convicted at the preceding term of the court for the same offense for which he was now being tried, that the jury should acquit him; but instructed the jury to the contrary of the instruction just mentioned. The result of this second trial, *so-called*, was that the jury brought in a verdict of guilty against the defendant assessing his punishment at imprisonment in the penitentiary for five years.

I. The first verdict rendered by the jury was in accordance with section 1263, Revised Statutes, 1879, upon which the indictment was based. Under that section, the jury having an alternative or discretion as to the kind or extent of the punishment to be inflicted, had the right to assess and declare the punishment in their verdict, and for this reason could have greatly increased or considerably diminished such punishment, and it was the duty of the court to have rendered a judgment according to such verdict. R. S. 1879, sec. 1929.

There are several instances where the court is authorized to fix the amount of punishment to be inflicted. Where the jury find a verdict of guilty, but fail to agree upon or declare the punishment or assess a punishment not authorized by law, in which cases the court is to assess and to declare the punishment, etc., and where the punishment assessed by the jury is below or exceeds the legal limit; in the former of which two cases the court is to fix the punishment at the lowest limit prescribed by law; and in the latter, the court disregards the excess of punishment inflicted, and sentences the defendant according to the highest limit of the law. And the court also has the power to diminish the punishment, to be inflicted, to the minimum provided by law, where the punishment assessed is greater than ought to have been inflicted. *Ib.*, secs. 1929, 1930, 1931, 1932, 1933.

These are the only instances known to our criminal law where a trial court can even apparently alter, lessen or increase the punishment awarded to a prisoner by a jury. So that it will be seen that, aside from the instances enumerated, the prerogative of a jury in criminal causes, as to finding verdicts of conviction, is as impregnable in its exercise, as is any given prerogative exercised by the trial court. Section 1965, of the statutes, provides that, "Verdicts may be set aside and new trials awarded on the application of the *defendant*."

It was a maxim and practice of the common law that no man was to be brought into jeopardy more than once for the same offense. 4 Bl. Com. 336. Our state constitution of 1820, article 13, section 10, declared : "That no person after having been once acquitted by a jury, can, for the same offense, be again put in jeopardy of life or limb." And upon this provision it was ruled that an acquittal was a complete protection against any further action on the part of the state. *State v. Spear*, 6 Mo. 644 ; *State v. Baker*, 19 Mo. 683. In both of these cases, grossly erroneous instructions had been given for the defendant, but this was not allowed to change the result. See also *State v. Cowan*, 29 Mo. 330.

Section 19 of article 1 of the Constitution of 1865, provided : "That no person, after having been once acquitted by a jury, can, for the same offense, be again put in jeopardy of life or liberty." And section 23 of article 2 of our present bill of rights declares : " * * * nor shall any person, after being once acquitted by a jury, be again, for the same offense, put in jeopardy of life or liberty."

So that, it will be at once seen, that at no time since our state organization have our citizens been unprotected by our organic law in the important right above set forth. These provisions of the three constitutions of this state,

former and now existing, are here quoted as well as the decisions based on the constitution of 1820, because the Kansas City court of appeals, where the present defendant applied for a writ of *habeas corpus*, expressed the opinion that we had in terms no such constitutional provision as that above quoted. *Ex parte Snyder*, 29 Mo. App. 256.

When the jury was charged with the deliverance of the defendant, that is when they are empanelled and sworn, the indictment being sufficient and the court being possessed of jurisdiction, his jeopardy begun. And when the jury brought in a verdict of conviction the plain and unavoidable duty of the trial court was to enter judgment and pass sentence accordingly. Cooley's Const. Lim. [5 Ed.] pp. 399, *et seq.*, and cas. cit.; 2 Kent's Com. [13 Ed.] p. 12, and cas. cit.; 1 Bishop's Crim. Law [7 Ed.] secs. 980, 981, 982, 1014, 1016, 1043, 1045, and cas. cit. And this duty the trial judge could have been compelled to perform by *mandamus*. *State ex rel. v. Knight*, 46 Mo. 83; *State ex rel. v. Adams*, 76 Mo. 605. In similar circumstances, the writ of *mandamus* may be employed in criminal as in civil cases. 1 Bishop's Crim. Proc. [3 Ed.] secs. 1402, 1403.

Viewed in the light of the authorities cited, and of sound reason, there was no justification or excuse for the course pursued by the trial court, in failing to enter judgment upon the first verdict, whether we follow the practice at common law, that defined by the statute, or the plain prohibition laid down in our constitution. Therefore the proceedings at the second trial being against law cannot be permitted to stand. The jurors were the sole judges of the heinousness of the offense, and of the punishment to be meted out therefor, and so long as they assessed a punishment within the bounds prescribed by the statute their verdict was beyond the control of any earthly power so far as concerns setting it

aside and granting a new trial in opposition to the will of the defendant. And such opposition will be presumed where the record, as here, recited that the verdict was set aside by the court "*on its own motion.*"

II. The next point in hand is whether the bill of exceptions signed by the bystanders has been sufficiently verified as to the allegations of facts therein contained. The trial judge, although he refused to sign the bill of exceptions, certified that the same was untrue, yet permitted the same to be filed. Upon such a state of facts it has been ruled that the bill will be presumed to be true, notwithstanding the denial of its truth by the judge, his permission of its filing being regarded as countervailing such denial. *Norton v. Dorsey*, 65 Mo. 376. This ruling accords with Revised Statutes, 1879, sections 3638, 3639, 3640. But apart from the foregoing decision the affidavits filed fully supported the bill, and as there were none filed *contra* the certificate of the judge is unsupported and must be held for naught.

III. The first, and only, legal verdict returned in this cause, was returned September 15, 1887 ; since which time the defendant has been confined in jail, his application to be discharged by *habeas corpus* having been denied. It is now urged that he be discharged from jail on the ground that he has long since served out the six months' term awarded him by the verdict of the jury. As the defendant was not sentenced under the first verdict, he cannot in strict law be said to have undergone any punishment, as a judgment and sentence must always precede the punishment in order that the latter may be legally inflicted. But does the fact in this case that there was no sentence passed upon him preclude the defendant from now insisting upon his discharge ? I am not of the opinion that it does, and for these reasons :

If the defendant on an erroneous judgment had submitted thereto and performed the sentence of the law,

it is agreed that he could not again be punished, and the reason given for this conclusion is that he might have brought a writ of error and reversed the judgment; but that he could waive this course, and if waived, the performance of the sentence was an answer to any further liability, arising from the same facts; in a word, if he made no objection to the erroneous and reversible proceedings, the state could not waive the objection for him and punish him over again. Having paid his debt to the state, such payment was the end of the law. 2 Lead. Crim. Cas. 554; 2 Bishop's Crim. Law [7 Ed.] sec. 1023; *Commonwealth v. Loud*, 3 Met. [Mass.] 328; *Vaux's Case*, 4 Coke, 44, and other cases cited.

In the present instance, the defendant, without any fault on his part, has been kept confined in jail, the place to which the verdict of the jury consigned him as a punishment; there he remained from the fifteenth day of September, 1887, until long after the expiration of the term of six months, the term of punishment assessed against him by the verdict which was set aside, a period of time greatly in excess of that term. Since that time, he has been transferred to the state penitentiary and is now there confined under the sentence illegally passed upon him, after being illegally tried the second time. Had the trial court performed its simple and plain duty, by passing sentence upon the defendant, on the return of the first verdict, he would long since have been discharged; but it is a maxim of the common law that " the default of the court shall not prejudice any one." 2 Hawk P. C. 534.

This being the case, even-handed justice demands that the defendant should no longer suffer imprisonment as the result of an act of judicial usurpation and oppression without equal in modern times. The judgment of the trial court, which caused the issuance of the writ of error herein, is hereby reversed, and an order herein will be entered in this court, expressly commanding the

judge of the criminal court of Jackson county, that on receipt of a copy of said order, he, said judge, do forthwith reinstate the original verdict in this cause, as of the date the same was returned and set aside, to-wit: the sixteenth day of September, 1887, and that this being done, he, the said judge, do forthwith enter judgment and sentence thereon as of said date last aforesaid. And a further order will be entered herein that two copies of said order duly certified be transmitted by the clerk of this court to the marshal of said criminal court, and that he, said marshal, be therein directed that without delay he do deliver one of said copies to said judge, and that upon the other of said copies he do forthwith make due and proper return thereof and certify thereon to this court how he has executed the same. And a further order will also be entered herein, commanding the warden of the state penitentiary to discharge said defendant from his custody. BLACK and BRACE, JJ., concur; RAY, C. J., absent; BARCLAY, J., concurs in the result to the extent of reversing the judgment and discharging defendant, but not in the special orders made.