**Charles WEAVER, Jr., Relator,**

v.

**George E. SCHAAF, Judge, Division One (Criminal Assignment), Circuit Court of St. Louis County, Respondent.**

**No. 58671.**

Supreme Court of Missouri, En Banc.

March 10, 1975.

Timothy A. Braun, Asst. Public Defender, Twenty-First Judicial Circuit, Clayton, for relator.

Gene McNary, Pros. Atty., John A. Newton, Asst. Pros. Atty., Clayton, for respondent.

SEILER, Judge.

This is an original proceeding in prohibition, involving a double jeopardy question. Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970) held that a municipal ordinance conviction bars a subsequent state prosecution for the same offense. The state seeks to avoid this doctrine on the ground that the municipal conviction in this case was allegedly procured by collusion.

Petitioner, defendant in the felony case pending before respondent, seeks to prohibit any further proceeding therein. We issued our provisional rule, which we now make absolute.

The facts come from a hearing on petitioner's motion to dismiss the state charge, together with the exhibits there introduced, and from the petition for prohibition, the answer, and return to the preliminary writ. Both the municipal charge (city of Bridgeton) and the state charge (St. Louis County) grow out of petitioner's driving a motor vehicle on April 19, 1973 along a public highway, Fee Fee Road, in Bridgeton, St. Louis County, while in an intoxicated condition. There is no disagreement that the prosecutions are for the same act or transaction. Petitioner, while intoxicated, drove across the center line and sideswiped an oncoming car containing three persons.

Petitioner was arrested at the scene by Officer Ennis of the Bridgeton police department. Ennis promptly made out and signed a complaint against petitioner for violation of the Bridgeton ordinance prohibiting driving while intoxicated. This took place late in the afternoon of April 19 and Ennis, as was the usual practice, left the complaint for filing with the city clerk, whose customary routine was to place her signature attesting verification on such complaints the following morning. Although the court clerk testified that the complaint reached her desk on April 20, was filed and put in the court file by her, she evidently failed to affix her own signature, an omission corrected several months later as related below. The complaint was given No. 73-1497 and docketed on April 20.

Later in the evening of April 19, 1973, a St. Louis County magistrate who had released defendant on probation following a guilty plea to an earlier state driving while intoxicated charge, instructed the Bridgeton police to produce defendant and the three witnesses before the magistrate the following morning for a probation revocation hearing. On April 20, 1973, after a hearing, the magistrate revoked petitioner's probation and sentenced him to serve the 90 days in jail to which petitioner had earlier been sentenced.

On June 18, 1973, at the instigation of the above mentioned magistrate, the county prosecutor's office was informed of the Bridgeton case. On or about June 21, 1973, petitioner, having received credit for good time served, completed his jail sentence imposed upon the April 20 revocation of probation. On June 22, 1973, the state filed a complaint in the same magistrate court, charging defendant with driving while intoxicated on the same occasion as earlier charged in the Bridgeton complaint. On July 2, 1973 Timothy A. Braun, as counsel for defendant appeared in the Bridgeton municipal court and stated that defendant desired to plead guilty to the ordinance violation.

The municipal judge, however, announced he would have to disqualify because he was acting as defendant's attorney in a pending divorce case. Petitioner's preliminary on the state charge was held July 27, 1973 and he was bound over. On August 1, 1973, the state filed an information in circuit court charging defendant with driving while intoxicated at the same time and place as charged in the Bridgeton complaint. On August 3, 1973, petitioner's counsel wrote the municipal judge, asking for a setting, informed the court of the pending felony charge, and stated his hope the matter could be resolved promptly as "it would relieve Mr. Weaver of the felony charge now pending against him." On August 6, 1973, defendant and counsel again appeared in municipal court and expressed a desire to plead guilty to the ordinance violation. On this date the municipal judge disqualified himself and set the case for a plea before an alternate judge for August 20. Under the Bridgeton charter, the municipal judge has authority to designate someone to act in his place, but there was difficulty in locating someone locally to serve, so the judge requested this court for an order and on November 27, 1973, we appointed Hon. Gene Pepka, who was municipal judge of Brentwood, to act in petitioner's case. In the meantime, the state case had been continued a number of times

in circuit court. The reasons for the continuances do not appear but it is not contended that they were at the request of defendant.

On November 29, defendant and his attorney, the Bridgeton prosecutor Thomas Howe, and the alternate judge, Judge Pepka, were present in municipal court. November 29 was selected because it was the only date all parties were available. All were aware of the felony charge pending in circuit court. Defendant waived his right to confront and cross-examine witnesses against him and his right to present evidence in his own behalf. He stipulated to the police report as a true version of what the city's witnesses would testify to. The court reviewed the police report and the written statements of the three witnesses and found defendant guilty of driving while intoxicated on April 19, 1973 in violation of the Bridgeton ordinance. The court then, on the recommendation of the city prosecutor, sentenced the defendant to six months in jail, credited him with 38 days,[1] suspended the execution of the remaining jail time, placed him on probation for one year and entered judgment accordingly.[2]

Fran Carpini, an assistant prosecuting attorney in St. Louis County, heard about the November 29th trial and on December 5 she went to the Bridgeton court and inspected the file. She discovered that no information had been filed and that the complaint, although signed by Officer Ennis, was unverified. She spoke with the Bridgeton prosecutor about the possibility that defendant would attack the case in circuit court on the ground of double jeopardy, but told Mr. Howe she thought the conviction could be set aside on the ground that no information had been filed on the charge in municipal court. She asked Mr. Howe not to file an information, but he said he did not know what he would do.

Petitioner's counsel became aware of these developments, contacted Judge Pepka and prosecutor Howe and suggested that the case be heard again. Howe testified that "to obviate any question about it", it was decided to do it over.

On December 11, the complaint signed by Officer Ennis was verified by the clerk and an information was filed by Mr. Howe. On December 17 there was a second trial. The same parties were present, and the same explanation of defendant's rights and stipulations were made. Defendant was again found guilty and the same sentence was imposed as at the November 29 trial. Howe testified that the December 17th date was selected as being convenient; that he knew Bridgeton had jurisdiction originally and could make a case; that he knew of no law that required him to drop a prosecution because an assistant prosecutor asked him to do so; that defendant was in jail from April 20 to around June 20 on his probation revocation and then an additional 38 days on the state charge before he made bond.

---

1. This apparently came from the 38 days for which defendant remained incarcerated after completion of his sentence following the probation revocation, before defendant was able to make bond on the state charge.

2. The judgment was as follows:
   "On November 29, 1972 the Defendant, Charles Weaver, Jr., appeared in Court in person and with his attorney, Timothy Braun, Assistant Public Defender. The City of Bridgeton appeared in Court by its Prosecuting Attorney, Thomas Howe.
   "The Defendant then waived his right to confront and cross-examine witnesses against him and his right to present evidence in his own behalf. The Defendant also stipulated to the police report as a true version of what the City's witnesses would testify to if they were present. The Defendant and the City then submitted the case to the Court on the police report. The Court, after reviewing the police report, found the Defendant guilty of Driving While Intoxicated in violation of Bridgeton municipal ordinance. Then the Court sentenced the Defendant to six months in jail, credited the Defendant for 38 days already served, suspended execution of the remaining jail time, and placed the Defendant on probation for one year. The Court did not assess court costs."

The next day, December 18, defendant filed a motion in circuit court seeking dismissal of the felony charges because defendant had already been tried and convicted for the same offense in Bridgeton municipal court. The respondent, Judge Schaaf, heard evidence on the motion on that day and also on December 27, when he overruled the motion.

Mr. Pepka, the special judge, was subpoenaed to appear at the hearing on the double jeopardy motion. Upon receiving the subpoena on December 14, he called Miss Carpini and asked her the purpose of the December 18 hearing, expressing his displeasure at being required to attend as he had a trial set for that day and witnesses coming in and he would have to make arrangements to continue "all those things." Miss Carpini testified that Mr. Pepka also stated, "There damn well will be double jeopardy by Tuesday" (the day of the hearing). Mr. Pepka testified he did not recall making that statement.

We first remark that Waller v. Florida, supra, sets forth the controlling principles of former jeopardy with respect to the prosecution and conviction of a defendant in municipal court followed by prosecution for the same offense in state court. In Waller, the defendant was one of a number of persons who removed a canvas mural from the city hall of St. Petersburg. He was convicted in municipal court for violating two city ordinances prohibiting destruction of city property and disorderly breach of the peace. Thereafter, on the basis of the same facts, defendant was convicted of grand larceny in a state court. The Supreme Court vacated the felony conviction on the ground that the "dual sovereignty" theory was an anachronism when applied to states and their municipalities; the judicial power to try the defendant on the first charges in municipal court sprang from the same organic law which created the state court of general jurisdic-

tion. The defendant's plea of former jeopardy in municipal court was good as against subsequent prosecution for the same offense in state court. See discussion of the Waller case in Kansas City v. Henderson, 468 S.W.2d 48, 50 (Mo.1971).

In the present case,[3] the prosecutor, as said, recognizes the Waller v. Florida doctrine, but contends this case is governed by the rule that a conviction of a criminal offense, procured fraudulently or by collusion of the offender, for the purpose of protecting himself from further prosecution and adequate punishment, is no bar to a subsequent prosecution for the same offense.

■ While we do not dispute the vitality of this principle, we find it is inappropriate to the circumstances of this case. First, it must be recognized that the events which occurred after November 29, 1973 (the date on which the defendant was first convicted in the Bridgeton court), are irrelevant for purposes of deciding this case for the reason that this first conviction was sufficient to put the defendant in jeopardy, barring any further prosecution for the same offense. The applicable rule here is that when a person is convicted under a void indictment and the penalty is paid in full, he cannot be prosecuted again for the same offense. As we said long ago in State v. Snyder, 98 Mo. 555, 562–3, 12 S.W. 369, 371 (1889): " . . . If the defendant on an erroneous judgment had submitted thereto and performed the sentence of the law, it is agreed that he could not again be punished, and the reason given for this conclusion is that he might have brought a writ of error and reversed the judgment; but that he could waive this course, and if waived, the performance of the sentence was an answer to any further liability, arising from the same facts; in a word, if he made no objection to the erroneous and reversible proceedings, the state

---

3. A city such as Bridgeton is not a sovereign entity, but is a subordinate governmental instrumentality of the state. See State ex rel.

Cole v. Nigro, 471 S.W.2d 933, 937 (Mo. banc 1971).

could not waive the objection for him and punish him over again . . . "

In Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), petitioner was convicted in a Maryland state court of burglary, but acquitted as to larceny. He appealed the burglary conviction, which was reversed because of a defect in requiring the jurors to swear their belief in the existence of God. On the second trial, the jury found petitioner guilty of both burglary and larceny. In the United States Supreme Court, petitioner contended he could not be tried the second time for larceny, having been acquitted in the first trial. In addition to holding that the Fifth Amendment double jeopardy provision applies to the states through the Fourteenth Amendment, the court dealt with the argument that inasmuch as the original indictment was absolutely void, double jeopardy was not involved, saying at 796–97, 89 S.Ct. at 2063: "One cannot be placed in 'jeopardy' by a void indictment, the State argues. This argument sounds a bit strange, however, since petitioner could quietly have served out his sentence under this 'void' indictment had he not appealed his burglary conviction . . . In any case, this argument was answered here over seventy years ago in United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). In that case Millard Fillmore Ball was indicted, together with two other men, for the murder of one William T. Box in the Indian Territory. He was acquitted and his co-defendants were convicted. They appealed and won a reversal on the ground that the indictment erroneously failed to aver the time or place of Box's death. All three defendants were retried, and this time Ball was convicted. This Court sustained his double jeopardy claim, notwithstanding the technical invalidity of the indictment upon which he was first tried. The Court refused to allow the Government to allege its own error to deprive the defendant of the benefit of an acquittal by a jury. Id., at 667–668, 16 S. Ct. 1192, 1194. '[A]lthough the indictment was fatally defective, yet, if the court had

jurisdiction of the cause and of the party, its judgment is not void, but only voidable by writ of error . . . .' "

The matter is discussed in 38 U.M.K.C. Law Review 167, at 272, as follows: " . . . This decision [referring to Benton v. Maryland, supra] makes clear that jurisdictional defects may not be used to overturn an acquittal. If the state would have suffered the defendant to serve out a sentence had he been convicted, it is an ill-boding argument that he was not put in jeopardy. Patently, even a total jurisdictional defect will not permit retrying a defendant who has served his sentence in full. Bayless v. United States, 147 F.2d 171 (8th Cir. 1945). Jurisdictional matters are now operative principally to enable the defendant to get his conviction reversed and to justify the state's retrying him, whatever may have been their role before *Benton*."

The prosecutor cites two cases, State ex rel. House v. White, 429 S.W.2d 277 (Mo. App.1968) and Kansas City v. Asby, 377 S.W.2d 511 (Mo.App.1964) which hold that convictions on a traffic ticket which did not bear the requisite signatures are void and of no effect, and that proceedings held thereunder were a nullity. These cases, however, involve direct appeals to set aside the convictions, and in neither case did the court have occasion to consider the effect of such a conviction had it remained unreversed and been asserted as a double jeopardy defense to a subsequent prosecution for the same offense, which is the situation now before us.

What we are holding is that the Bridgeton judgment was and remains valid so long as it is unreversed by the defendant. The state cannot challenge the defendant's conviction obtained in a court of competent jurisdiction. In the words of Justice Livingston, "[i]t is very like permitting a party to take advantage of his own wrong." People v. Barrett and Ward, 1 N.Y. 66, 74 (1806), quoted with approval in United States v. Ball, supra, 163 U.S. at 668, 16

S.Ct. 1192. See also Davis v. State, 37 Tex.Cr. 359, 39 S.W. 937 (1897); Ford v. State, 7 Ind.App. 567, 35 N.E. 34 (1893); State v. Thomson, 76 N.D. 125, 34 N.W.2d 80 (1948); 22 C.J.S. Criminal Law, § 246, p. 652.

Next, however, the prosecutor takes the position that inasmuch as the petitioner's lawyer was trying to have the municipal prosecution set down for trial, when he knew there was also a state charge pending against his client for the same offense, this somehow infects the municipal conviction so that it does not operate as double jeopardy with regard to the state charge and counsel was thereby doing something wrong.

Counsel made no effort to deceive the court or conceal the fact the state prosecution was pending. On the contrary, in his letter of August 3, 1973 to Judge Johnson, the municipal judge in Bridgeton who was attempting because his conflict of interest to secure an alternate judge, defense counsel, after asking for a setting, concluded by saying, "I hope we can resolve this matter in your court immediately for it would relieve Mr. Weaver of the felony charge now pending against him." Again on November 9, amid the numerous delays which occurred in both courts, defense counsel wrote the municipal judge, asking for a trial setting, saying, "Since Mr. Weaver's case in the Circuit Court is set on the Circuit Court docket of November 23, I am sure you realize my desire for disposing of this matter in Bridgeton with dispatch."

We do not accept the prosecutor's view of the duty of the defendant's counsel. We know of no rule or standard which requires a lawyer to represent his client so that he will receive a greater rather than a lesser punishment. Canon 7 requires that "A Lawyer Should Represent a Client Zealously Within the Bounds of the Law." EC 7–4 states, in part, ". . . His conduct is within the bounds of the law, and therefore permissible, if the position is supported by the law . . ."

The foregoing is essentially a restatement of our former rule 4.05, which provided, in part, ". . . Having undertaken such defense of a person accused of crime, the lawyer is bound by all fair and honorable means, to present every defense that the law of the land permits, to the end that no person may be deprived of life and liberty, but by due process of law." Former rule 4.15, dealing with how far a lawyer may go in supporting a client's cause, stated, in part: ". . . In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defect . . ."

We see nothing sinister or improper in defense counsel seeking to have the municipal prosecution brought to trial with a view toward obtaining a better disposition for his client. He was not in charge of the court's docket or the setting of cases, and the only way he could obtain a trial or disposition was to ask for a setting. There is nothing illegal about a defendant or his lawyer preferring to be punished for a misdemeanor to foreclose a subsequent felony prosecution. This is a risk which inheres in a state system where responsibility for prosecution is lodged in different places at the same time. There is no law which compels a municipal court to suspend its proceedings or defer to prosecution by the state. See Benard v. State, 481 S.W.2d 427 (Tex.Cr.App.1972). Defense counsel was under no obligation to stand aside and wait for the state prosecution to proceed. Ours is an adversary system and if counsel is one step ahead of his opponent, so be it. There was no reason why he could not claim the doctrine of Waller v. Florida as an incidental benefit to his client flowing from the municipal conviction. In fact, counsel would be subject to censure had he not endeavored to obtain a trial and disposition of the case in municipal court if so doing would redound to the benefit of his client, provided he was open and above board with the court

about the existence of the pending state prosecution for the same offense, as he was. We therefore reject the contention of the prosecutor that defendant is not entitled to assert the municipal conviction as a double jeopardy bar by reason of defense counsel having undertaken to obtain a setting and disposition of the municipal case without waiting for the state to try its case against defendant.

■ The prosecutor next contends the municipal judge, the city prosecutor and defense counsel were guilty of collusion in the re-trial of defendant on December 17, 1973, after the officer's signature on the complaint was verified and an information filed, and the trial proceeded with the same evidence as before and with the same outcome. In the first place, this disregards the fact, as earlier pointed out, that the November 29 trial and conviction itself provided a double jeopardy bar without any subsequent trial being had at all. In the second place, there is no evidence in this record of any collusion.

The kind of collusion which the cases cited by the state[4] hold is a bar to claiming double jeopardy consists of instances where the defendant hastened before a justice of the peace or magistrate and instituted proceedings against himself, or had a relative do so, had an immediate trial, pleaded guilty and then sought to use these sham proceedings as a double jeopardy bar to subsequent prosecution by the state. These were instances where no process had been independently instituted against the defendant in the court which first convicted him.

That is not true of the case before us. The Bridgeton charge was filed by the arresting officer, promptly, and although his signature was not made before the city clerk, this was in accord with the usual practice in Bridgeton that complaints be verified by the clerk the next day, and there is not the slightest basis for believing Officer Ennis' complaint was not made in good faith or that it was in any manner instigated or arranged by defendant or his counsel.[5]

We note, too, that there was no unseemly rush to proceed in the city case and that the regular city judge properly and promptly disqualified, upon learning the defendant was his client in another matter. It took several months to obtain an acting judge and not until November 29 was the matter heard. In the meantime, the state case had been continued repeatedly and there is no contention that this was the defendant's doing. The acting city judge, Judge Pepka, was understandably upset

---

4. These are Missouri v. Cole, 48 Mo. 70 (1871), Smith v. State, 219 Miss. 741, 69 So. 2d 837 (1954), and Edwards v. Commonwealth, 233 Ky. 356, 25 S.W.2d 746 (1930).

5. Officer Ennis did not use the uniform traffict ticket form suggested in the Supreme Court rules. He used a Bridgeton police form entitled "Driving While Intoxicated Offense Report" on which he recorded the facts and circumstances surrounding the offense, witness statements, etc. In addition to this report, Officer Ennis made out and signed a separate document entitled "Complaint" for driving while intoxicated in violation of Bridgeton Ordinance No. 327. This complaint read as follows:

COMPLAINT    73–1497

In the Municipal Court of the City of Bridgeton, Missouri
The City of Bridgeton, Plaintiff vs. Charlie (NMN) Weaver Jr. Defendant

5518 Fee Fee Road, Bridgeton, Mo.
Defendant's Address
NOW COMES Patn. Terry Ennis #24
ADDRESS 11955 Natural Bridge
and being duly sworn, complains that on or about the 19th day of April 1973 at or near Fee Fee Road & Carmel Court within the Corporate limits of the City of Bridgeton, Missouri the above-named defendant did then and there unlawfully violate City of Bridgeton Ordinance No. 327 Section —— by Driving While Intoxicated.

/s/ Patn Terry Ennis #24

Subscribed and sworn before me this —— day of —————— 19—.

——————————————————
   Judge

——————————————————
   Clerk

over being subpoenaed on short notice to appear at the state court hearing on a date when he had previous commitments in his regular law practice, but the remark attributed to him, if made, does not establish a collusive intent. It was no more than an expression of his intention as judge of the municipal court to persist in what the court considered a proper disposition of the case. As the city prosecutor, Mr. Howe, testified, "to obviate any question about it", it was decided to do it over.

Collusion is a serious charge to make against a court, its officers, and counsel for the city and the defense. Collusion is defined by the dictionaries as cooperation for a deceitful or fraudulent purpose, a secret understanding whereby one party plays into another's hands for fraudulent purposes, an agreement between two or more persons to obtain an object forbidden by law. Our courts have defined "collusion" as "a secret concert of action between two or more for the promotion of some fraudulent purpose", Bowen Improvement Co. v. Van Hafften, 209 Mo.App. 629, 238 S.W. 147, 149 (1922). In Colegrove v. John Hancock Mut. Life Ins. Co., 153 S.W.2d 750, 752 (Mo.App.1941) collusion is said to be "an agreement between two or more persons to defraud another under the forms of law, or to accomplish an illegal purpose."

There was no unlawful purpose here. The city of Bridgeton has a legitimate interest in prosecuting and convicting one of its residents who operates a vehicle on its streets while intoxicated. The Waller v. Florida doctrine may have put the city and the state in competition, but this does not mean that the one which convicts first has thereby accomplished an illegal purpose with respect to the other, even though the legal effect is to bar the other from further prosecution.

Not only is there no evidence of collusion, there is no indication of any motive or reason why the municipal judge and the city prosecutor would collude to favor this indigent defendant represented by an assistant public defender, in an effort somehow to defraud the state. While as we say, the re-prosecution on December 17, 1973 added nothing to the earlier conviction in terms of the double jeopardy defense, we do not believe it is fair to the municipal judge, the city prosecutor and defense counsel to permit the unfounded charge of collusion made by the prosecution to go unremarked.

We hold then that the felony prosecution served to put the defendant in jeopardy a second time for an offense for which he had already been tried, convicted, and sentenced. The prosecutor urges, however, (although conceding that under ordinary circumstances the circuit court would be barred from proceeding) that prohibition is not a proper remedy in this case; that the defendant must undergo his trial and appeal from respondent's order overruling his motion to dismiss. We disagree.

Only one Missouri case has been found which purports to hold that prohibition does not lie to prevent double jeopardy, State ex rel. Meador v. Williams, 117 Mo. App. 564, 92 S.W. 151 (1906). There the court refused to bar the retrial of relators whose first trial on the same charge had been withdrawn from the jury on the prosecutor's motion, over objection of relators, when the state's key witness failed to appear after the trial had commenced. The first trial took place in the August 1905 term. The second trial was scheduled for the February 1906 term. In the meantime relators had filed in the trial court their motion for discharge on the ground of double jeopardy arising from the first trial. Upon the court's overruling the motion, the relators sought prohibition. While the court of appeals concluded to deny the writ, the court stated there was "a doubt in our minds regarding the matter" and made it plain that when the case came up for trial in the February 1906 term (the decision was handed down January 2, 1906), the trial court should sustain

the motion. The effect of the decision was therefore about the same as if prohibition had been granted, but if the Meador case, decided almost 75 years ago, can be said to stand for the proposition that prohibition does not lie in a case such as the one before us, it should be overruled, as it fails to give the constitutional provisions against double jeopardy their required effect.

The constitutional right against double jeopardy is much more than the right to have the second conviction set aside on appeal. "It consists of being protected from having to undergo the rigors and dangers of a second—illegal—trial. Double jeopardy is not a mere defense to a criminal charge; it is a right to be free from a second *prosecution,* not merely a second *punishment* for the same offense (though that is obviously included in the right). The protection of the Double Jeopardy Clause is 'not against being twice punished, but against being twice put in jeopardy.' United States v. Ball, 163 U.S. 662, 669, 16 S. Ct. 1192, 41 L.Ed. 300 (1896); Ex parte Lange, 85 U.S. (18 Wall.) 163, 169, 21 L. Ed. 872 (1874); Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) . . . [T]he right is one which can and should be vindicated without waiting until the state decides to conduct a trial . . . [I]t is the right to be left alone which he seeks to enforce against the [s]tate . . .", Fain v. Duff, 488 F.2d 218, 224 (5th Cir. 1973).

In Robinson v. Neil, 409 U.S. 505, 509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973), the court said: "While this guarantee [double jeopardy], like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial." Obviously, to require a defendant with a valid claim of former jeopardy to undergo the pressures and rigors of trial before he is able to bring his claim before an appellate court does not afford adequate protection of the right to be free from double jeopardy. The inadequacy of the available remedies, is, of course, a requisite to the writ of prohibition.

■ Next, prohibition is available to keep a lower court within the limits of its power in a particular proceeding, as it is to prevent the exercise of jurisdiction over a cause not given by law to its consideration. State ex rel. Knisely v. Board of Trustees, 268 Mo. 163, 186 S.W. 680 (banc 1916). In the civil area, we have held that prohibition will lie to prevent a court from hearing matters which are res judicata, State ex rel. Gary Realty Co. v. Hall, 322 Mo. 1118, 17 S.W.2d 935 (banc 1928), on the grounds that such power is unauthorized by law and that it would result in injury for which no other adequate remedy exists. These same considerations are fully applicable to a claim of former jeopardy, which can be said to be in some degree the counterpart of res judicata in the criminal area, since both involve elements of finality. See State v. Labato, 7 N.J. 137, 80 A.2d 617 (1951) and Commonwealth v. Moon, 151 Pa.Super. 555, 30 A. 2d 704 (1943).

■ We note also that other jurisdictions have found the former jeopardy issue cognizable by writ of prohibition. See, e. g., Curry v. Superior Court, 2 Cal.3d 707, 87 Cal.Rptr. 361, 470 P.2d 345 (1970); Markiewicz v. Black, 138 Colo. 128, 330 P. 2d 539 (1958); State v. Lane, 209 So.2d 873 (Fla.App.1968); Ferlito v. Judges of Suffolk County, 39 A.D.2d 17, 331 N.Y.S. 2d 229, aff'd, 31 N.Y.2d 416, 340 N.Y.S.2d 635, 292 N.E.2d 779 (1972); State ex rel. Zirk v. Muntzing, 146 W.Va. 878, 122 S. E.2d 851 (1961). We quote with approval from McCabe v. Bronx County Court, 24 Misc.2d 472, 199 N.Y.S.2d 241 (1960): "The plea of double jeopardy is not a defense in the ordinary sense. For a defense such as alibi, self-defense, lack of intent, etc., is aimed at establishing the defendant's innocence of the crime charged and of necessity must be proffered at trial; whereas the plea of double jeopardy (un-

less there was an actual acquittal upon prior trial) is not directed toward establishing the defendant's innocence but is an assertion of a constitutional grant of immunity. Therefore, it is more than a defense. The act which terminates the first trial germinates into life the dormant seed of constitutional immunity . . . Therefore reason and logic indicate that it is permissible to raise the plea of double jeopardy before the commencement of another trial and in whatever form is proper and available." 199 N.Y.S.2d 245–46.

The provisional writ of prohibition is made absolute.

DONNELLY, C. J., and MORGAN and BARDGETT, JJ., concur.

HENLEY, J., dissents in separate dissenting opinion filed.

HOLMAN and FINCH, JJ., dissent and concur in separate dissenting opinion of HENLEY, J.

HENLEY, Judge (dissenting).

I respectfully dissent.

My disagreement with the principal opinion on the double jeopardy question is not based on the suggested theory that the municipal court conviction was procured by collusion with the municipal judges and attorney. Rather, my disagreement is based on the proposition that the defense of double jeopardy is a shield behind which a defendant may take refuge, not a weapon to be used to enforce a defense actively sought and obtained by him to avoid the effect of a more serious charge.

"The prohibition against double jeopardy is a doctrine or concept designed to restrain the sovereign power, and to prevent the government from unduly harassing an accused. It is designed to protect an individual from being subject to the hazards of trial and possible conviction more than once for an alleged offense; and the idea underlying the doctrine is that the state, with all its resources and power, should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby * * * compelling him to live in a continuing state of anxiety and insecurity * * *." 22 C.J.S. Criminal Law § 238, p. 620; Abbate v. United States, 359 U.S. 187, 198–199, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). See also: State v. Cole, 48 Mo. 70 (1871). In other words, it is designed to help equalize the position of government and the individual. It is not designed for use by one who, to establish absolution from a felony charge, actively solicits and secures his own conviction of a less severe charge; in this case, that of violating a municipal ordinance, a charge which had lain dormant for months without an information having been filed until he began to push those who could resurrect it.

There can be no doubt that relator[1] actively and persistently sought his conviction of the Bridgeton municipal ordinance violation in time to establish for himself a double jeopardy defense against the more serious charge he knew was pending against him. The sole and only action taken on behalf of the city in connection with the municipal ordinance violation, not taken at the request and insistence of the relator, was the filing of the unverified complaint by the arresting officer on the evening of the offense. All other action taken was the result, directly or indirectly, of relator's request, which, according to the first letter to the municipal judge, was for the purpose of resolving that matter promptly so that "it would relieve Mr. Weaver of the felony charge now pending against him."

---

1. Defendant in the case of State v. Weaver, No. 346304, pending in the circuit court of St. Louis county, in which he was charged by information pursuant to § 564.440(3), RSMo 1969 with operating a motor vehicle while intoxicated (DWI), a felony since the information charged that he had been charged with and convicted of two prior DWI offenses (October 1, 1972, and January, 1973).

In these circumstances, I would hold that the defense of double jeopardy is not available to relator in the felony charge pending against him in St. Louis county.

I also disagree with the holding of the principal opinion that prohibition is an appropriate remedy in this case. I would not sanction what amounts to interlocutory review of rulings of the trial court in criminal cases, primarily because the delay it fosters hinders effective administration of justice. Clearly, the trial court has jurisdiction of the subject matter of the criminal proceeding out of which this action arose, jurisdiction of the person of relator, and jurisdiction to rule on relator's motion to dismiss that charge. Appeal is an adequate remedy in this case. State, ex rel. Meador et al. v. Williams, Judge et al., 117 Mo.App. 564, 92 S.W. 151 (1906). I would hold that prohibition does not lie.

I would discharge our provisional rule.