Sylvia VAUGHAN, Plaintiff–
Respondent,

and

Vicki Tharp, Darrin Tharp, Lloyda Tharp, Michelle Tharp, Shanna Tharp, Robert Tharp, Michael Tharp, State Farm Mutual Automobile Insurance Company, Inc. and Farmers Insurance Company, Inc., Intervenors–Plaintiffs–Respondents,

v.

UNITED FIRE & CASUALTY
COMPANY, Defendant–
Appellant.

No. 24657.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 31, 2002.

Motion for Rehearing and Transfer to Supreme Court Denied Nov. 21, 2002.

Application for Transfer Denied
Dec. 24, 2002.

John G. Schultz, Brandee B. Bower, Franke Schultz & Mullen, P.C., Kansas City, for appellant.

John O. Newman, Newman Law Firm, Springfield, for respondent Sylvia Vaughan.

Randy R. Cowherd, Newberry, Haden, Cowherd, Bullock, Keck & McGinnis LLC, Springfield, for respondents State Farm Mutual Automobile Insurance Co., Inc. and Farmers Insurance Co., Inc.

Daniel T. Ramsdell, Ken Willoughby, Ramsdell Law Firm, Springfield, for respondents Lloyda Tharp, Michelle Tharp and Shanna Tharp.

John M. Henderson, Jr., Springfield, for respondents Vicki Tharp and Darrin Tharp.

Tad K. Morlan, Springfield, for respondents Michael Tharp and Robert Tharp.

NANCY STEFFEN RAHMEYER, Chief Judge.

This is an appeal from an entry of an equitable garnishment against the defendant, United Fire & Casualty Company ("Appellant"). The underlying basis for this garnishment came as the result of a

settlement for an automobile accident, which occurred on May 18, 1995 in Springfield, Missouri at the intersection of Sunshine Street and Glenstone Avenue. A van driven by Dennis Hyman ("Hyman") hit a Toyota driven by Michael Bland ("Bland") and killed Robert Tharp, a passenger in the Toyota.[1] A wrongful death suit was brought by the statutory plaintiffs ("Plaintiffs"), including Plaintiff Sylvia Vaughan ("Plaintiff Vaughan"), against Bland and his employer, Tile Town of St. Louis, Inc. ("Tile Town"). Bland brought Hyman into the suit in a third-party action. Hyman's employer, Sunshine Lighting Company, was insured by Appellant and it denied coverage for Hyman's liability arising out of the accident.

Hyman, who was not charged with any offenses as a result of the accident, was subsequently incarcerated for unrelated charges. His attorney, Erik Belk ("Belk"), informed Appellant he was representing Hyman in the accident lawsuit. When Appellant offered to defend Hyman under a reservation of rights, Belk refused and insisted upon a defense without a reservation of rights for his client. After Appellant refused to defend without a reservation of rights defense, Hyman entered into a § 537.065[2] settlement with Plaintiff Vaughan in the amount of $625,000, with the provision that judgment could be entered against him but could be collected from Appellant only.

Appellant brought a declaratory judgment action to determine whether Hyman had liability insurance coverage for claims arising from the accident. The trial court granted summary judgment in favor of Hyman on the issue of coverage and this court affirmed the judgment. *See United Fire & Casualty Co. v. Tharp*, 46 S.W.3d 99 (Mo.App. S.D.2001). Plaintiff Vaughan then initiated an action for garnishment against Appellant and the remaining statutory plaintiffs intervened. The garnishment action was based on the finding of coverage and a prior entry of judgment against Hyman and Tile Town in the amount of $625,000.

At the garnishment hearing, Appellant raised the propriety of the settlement agreement between Hyman and Plaintiff Vaughan. The trial court found that Hyman entered into the settlement agreement "in good faith to protect himself from personal responsibility for any award" arising out of the motor vehicle accident. The trial court also found that the agreement was not the product of fraud or collusion and was a reasonable reflection of what a reasonable person in the position of Hyman would have done considering the facts bearing on liability and damages. We affirm.

█ A § 537.065 settlement must be reasonable and free from fraud and collusion. *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 815 (Mo. banc 1997). Ap-

---

1. Appellant claimed in its brief, "[w]hen Mr. Bland ran the red light, he hit Dennis Hyman's vehicle, causing an accident." Appellant cites to the testimony of a witness, Calvin Stoops, in support of that proposition. Calvin Stoops never claimed the Toyota hit the van, but rather, stated: "the white van—came through at the same time and hit the Toyota 4Runner in the driver's side." Respondents request that the brief be dismissed for failing to comply with Rule 84.04(c), Missouri Rules of Civil Procedure (2002), which requires that the statement of facts "be a fair and concise statement of the facts relevant to the questions presented for determination without argument." *See Brill v. Brill*, 65 S.W.3d 583, 585 (Mo.App. S.D.2002). While we agree Appellant's Statement of Facts is replete with misrepresentations such as this, we review Appellant's claim on its merits. The motion to dismiss is overruled.

2. All references to statutes are to RSMo 2000, unless otherwise indicated.

pellant claims the trial court erred in enforcing the § 537.065 settlement because it was the product of fraud and collusion and was unreasonable in that: 1) Hyman forfeited a significant personal injury claim against Bland and allowed judgment to be taken against him; 2) Hyman had not been served with a lawsuit when Plaintiff Vaughan's attorney suggested attorney Belk represent Hyman and a § 537.065 agreement be entered; 3) Plaintiff Vaughan's attorney paid $500 to Hyman's mother and supplied Hyman with stamps before the agreement was signed; 4) Hyman maintained he was not at fault for the accident, whereas Bland pled guilty to four charges and was intoxicated at the time of the accident; and 5) multiple witnesses maintained that Hyman was not responsible for the accident yet the agreement placed fault on Hyman and Bland equally.

Appellant's primary complaint is Belk's legal representation of Hyman; therefore, we shall first discuss the hiring of Belk as Hyman's attorney. Jim Corbett ("Corbett") represented Plaintiff Vaughan. Corbett contacted Hyman while he was confined to a penitentiary to discuss Hyman's testimony. Corbett and Hyman discussed Hyman's activities leading up to the accident and how it occurred and Corbett informed Hyman that he had been sued as a result of the accident. Corbett suggested that Hyman hire Belk to represent him in that suit, which Hyman agreed to do. Belk subsequently contacted Hyman directly via telephone and traveled with Corbett to the penitentiary where Hyman was incarcerated. Belk explained to Hyman the lawsuit, comparative fault, his assessment of the liability and coverage issues and obtained authority to tender the defense of the lawsuit to Appellant. An agreement was reached between the parties that if Appellant did not defend Hyman, Hyman would enter the § 537.065 agreement, which is the subject of Appellant's complaint.

Both Corbett and Belk testified the settlement agreement was the product of negotiation between the two of them. Belk testified that he believed the settlement agreement was in Hyman's best interest because there was evidence that Hyman bore some fault for the accident and, under joint and several liability, even if Hyman was apportioned one percent of the fault, the entire judgment could be collected from him. Belk testified that Appellant directed to Belk an offer to defend Hyman with a reservation of rights; however, Belk rejected that offer and demanded that Appellant defend Hyman without a reservation of rights. Belk further informed Appellant in a letter that if it refused to admit coverage and provide an unqualified defense, Hyman would "be forced to negotiate a settlement with plaintiff's counsel in order to protect his personal assets." Appellant, via letter, acknowledged that Belk and Hyman refused to accept a reservation of rights defense and advised Belk it thought Hyman had little, if any, liability.

Appellant does not contest the amount of the settlement agreement in its point relied on but rather contends the agreement itself should not have been entered because of the liability issues. Because the amount of damages is not contested as excessive, but only excessive in relation to the issue of Hyman's potential liability, we shall discuss Appellant's complaint that the settlement was the result of fraud and collusion first.

 Collusion is a "secret concert of action between two or more for the promotion of some fraudulent purpose." *Weaver v. Schaaf*, 520 S.W.2d 58, 66 (Mo. banc 1975) (*quoting W.E. Bowen Improvement Co. v. Van Hafften*, 209 Mo.App. 629, 238 S.W. 147, 149 (1922)). In other words,

a key element of collusion is promoting a fraudulent purpose. Appellant must show someone conspired with someone else to promote a fraudulent agreement. Although Appellant cites to the cases concerning liability for common law fraud in a tort case,[3] none of the elements of fraud were listed or explained in Appellant's argument. It appears that Appellant is actually talking about a fraud upon the court or extrinsic fraud. Extrinsic fraud has been defined as a fraud that induced a party to default or consent to judgment against him. *See Sanders v. Ins. Co. of North America*, 904 S.W.2d 397, 401 (Mo. App. W.D.1995); *Thompson v. Columbia Mutual Ins. Co.*, 820 S.W.2d 626, 631 (Mo. App. S.D.1991). "[F]raud is a positive act resulting from a willful intent to deceive." *Memco., Inc. v. Chronister*, 27 S.W.3d 871, 875 (Mo.App. S.D.2000).

■ Appellant complains that a fraud was committed when Belk failed to explain to Hyman that he could pursue a claim for personal injuries against Bland or Tile Town and, thus, Hyman was precluded from recovering damages for his injuries from the person who was truly at fault for the accident, Bland. Appellant has not stated any specific representation made to Hyman by Belk or any other attorney but seems to be arguing that Belk failed to properly inform Hyman regarding a purported claim for Hyman's own personal injuries. Appellant further averred that Hyman sustained significant personal injuries as a result of the accident which occurred on May 18, 1995; however, Appellant failed to cite to any place in the transcript or legal file to support that claim as required by Rule 84.04(i).[4] There is no indication in the transcript that Hyman incurred significant injuries or gave up any legal right to pursue damages for

those injuries against Bland or anyone else. As such we will consider this portion of Appellant's argument abandoned. *See McNear v. Rhoades*, 992 S.W.2d 877, 883 (Mo.App. S.D.1999).

■ Appellant's next claim is that the agreement was the product of fraud and collusion because Hyman had not been served with the lawsuit when Corbett suggested Belk represent Hyman and enter into a settlement agreement. Even if it is true that Hyman had not been served with the lawsuit, we fail to grasp the significance of this fact as it pertains to evidence of fraud or collusion. Hyman was in fact sued by Bland and brought into the lawsuit. It is certainly arguable that Hyman needed personal representation in view of the fact Appellant was refusing to defend without a reservation of rights. Keeping in mind that collusion must be for the promotion of a fraudulent purpose, Appellant's argument rings hollow.

■ Appellant next contends that the settlement was obtained through fraud and collusion because Corbett paid $500 to Hyman's mother and supplied Hyman with stamps before he signed the agreement. Plaintiffs agree that Corbett did in fact give $500 to Hyman's mother and supplied Hyman with stamps; however, Plaintiffs argue that the agreement to enter into a § 537.065 settlement if Appellant did not defend Hyman took place long before any gifts by Corbett. The agreement was made at the first meeting between Corbett, Belk and Hyman. Corbett noted that even prior to the lawsuit being filed and any contact between Hyman and Corbett was made, Hyman testified in workers' compensation hearings in a manner consistent with the testimony in the acci-

---

**3.** *See Trimble v. Pracna*, 51 S.W.3d 481 (Mo. App. S.D.2001).

**4.** All rule references are to Supreme Court Rules (2002), unless otherwise stated.

dent suit. He further noted that when the agreement was made, all of the attorneys assumed that Appellant would defend Hyman and were shocked when Appellant did not.

Corbett explained the gift of $500 and stamps as a result of dealing with someone in a penitentiary who doesn't have to cooperate with depositions and hearings at all. Hyman requested that Corbett come to the penitentiary to sign the agreement, but Corbett was worried that Hyman would not cooperate in giving deposition testimony or otherwise if Appellant provided an unqualified defense. Plaintiffs contend that Hyman's cooperation in depositions and at hearings was a condition precedent to coverage under Appellant's policy. Corbett testified that Hyman stated: "Well, my mama needs some money, and if you pay my mama $500, I agree to cooperate and give deposition testimony whenever you need it." Hyman also requested a book of stamps. Corbett testified that Hyman talked with Corbett on several occasions about how he was sick of the whole matter and felt he had been embarrassed by questions of his criminal convictions by insurance lawyers. Corbett specifically asked Hyman if he was going to sign the agreement to which Hyman replied that he would.

■ This court defers to the factual findings of the trial judge, who is in a superior position to assess credibility. *Brawley v. McNary*, 811 S.W.2d 362, 365 (Mo. banc 1991). Belk testified at the garnishment hearing. He specifically testified that while his knowledge of the $500 and the stamps was limited because he was not involved in the transfer, it was his understanding the transfer of these items occurred quite a while after the parties entered into negotiations of the § 537.065 settlement. Belk denied that the $500 or stamps were offered as an incentive for

Hyman to enter into the agreement and stated that he, as Hyman's attorney, advised him to enter into the agreement for his own protection. The trial court was in a better position to assess the credibility of Belk.

■ We sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Farmers' Electric Cooperative, Inc. v. Missouri Dept. of Corrections,* 59 S.W.3d 520, 522 (Mo. banc 2001). We cannot say that the payment of $500 to Hyman's mother and the book of stamps by Corbett outweighs all the other evidence or is an erroneous declaration or application of law that would counteract the court's finding that the agreement was not the product of fraud or collusion and was a reasonable reflection of what a reasonable person in the position of Hyman would have settled for on the merits of the claims asserted by Plaintiffs.

■ Appellant next contends that the fact that Hyman maintained he was not at fault for the accident, whereas Bland pled guilty to four charges for the accident, is further evidence of the fraud and collusion surrounding the settlement. Appellant cites no cases in which evidence of a person entering into a settlement agreement while maintaining no fault indicates a fraudulent or collusive agreement. Many, if not most, settlements result as a compromise on liability. We fail to see how this fact supports a conclusion that the agreement was fraudulent or collusive, particularly in light of the additional facts as set out herein.

■ Appellant's last contention in its point relied on is that the agreement must be the result of fraud and collusion because multiple witnesses maintained that

Hyman was not at fault for the accident and, yet, the agreement placed fault on Hyman and Bland equally. Again, Appellant only cites facts supporting its claim that Bland was totally at fault and fails to cite facts in the record indicating any fault of Hyman. For instance, the record indicates Hyman may have been intoxicated at the time of the accident. The accident report indicated that "drinking" on Hyman's part was a probable contributing circumstance. Hyman's testimony was that he had purchased and consumed one-fourth to one-half of a half pint of Crown Royal whiskey prior to the accident.[5] Although one test indicated Hyman had a blood alcohol level of .06, an earlier test at the hospital indicated a blood alcohol level of .123. The officer who investigated the accident indicated he would need to do field sobriety tests or have other means to determine whether Hyman was impaired by alcohol consumption. Sobriety tests were not done because Hyman was hospitalized. The officer, who was sent to the hospital to investigate Hyman and make a determination as to whether Hyman was intoxicated, arrested him.

Furthermore, there was testimony that Hyman had marijuana in his system at the time of the accident. Hyman testified that officers informed him he had marijuana in his system after the accident and Hyman admitted to smoking marijuana earlier in the week. An eyewitness testified he felt Hyman was under the influence of drugs at the time of the accident.

There was other evidence that could have been used at trial indicating that the intersection of the accident was straight and level and that a person traveling in the location and direction Hyman was traveling should have been able to see the Toyota at some point before the collision. Hyman testified he never saw any vehicles approaching the intersection. There was evidence that the only skid marks left by Hyman's vehicle were at or near the point of impact. The eyewitness indicated he did not see the van Hyman was driving make any attempt to avoid colliding with the Toyota.

Finally, there was evidence from Bland's passenger that Bland had actually stopped for the red light and waited for the light to change to green. While there was ample evidence that Bland was at fault, there was also substantial evidence that Hyman could have shared in the apportionment of fault for the accident. Hyman admitted that by drinking and driving he was not exercising the highest degree of care. All this evidence supports the trial court's determination that the agreement was a reasonable reflection of what a reasonable person would do in the position of Hyman considering the facts bearing on liability and damages.

 Appellant cites in a cursory fashion to *Trimble v. Pracna*, 51 S.W.3d 481 (Mo.App. S.D.2001) and *W.E. Bowen Improvement Co. v. Van Hafften*, 209 Mo. App. 629, 238 S.W. 147 (1922), for support that the entering of this agreement was an example of fraud and collusion. *Trimble* involved the suit of a bondsman on a bond indemnity agreement. *Trimble*, 51 S.W.3d at 486. The trial court in *Trimble* granted a directed verdict for the defendant on the claim for fraud and conspiracy to commit fraud. *Id.* at 497. This court found error in the granting of the directed verdict in that there was evidence from which reasonable minds could have differed as to the truthfulness of the defendant's statements to the bondsman. *Trimble* at 498. We

---

5. Hyman's credibility on all issues probably would have been challenged based on his incarceration at the time of the trial.

find nothing apropos to the case before us. As noted herein, there has been no allegation of any false representation to Hyman by Belk. As noted in *Trimble,* "civil conspiracy is not a cause of action in and of itself; rather, it extends liability based on an underlying wrongful act." *Trimble* at 501 (*quoting Mark VII, Inc. v. Barthol,* 926 S.W.2d 128, 131 (Mo.App. W.D.1996)). Appellant fails to show the underlying wrongful act.

Likewise, *Bowen* is not factually or legally on point. In *Bowen,* the reviewing court discussed an earlier case in which a contractor and the city agreed to bring a lawsuit to test the validity of a city ordinance. 238 S.W. at 148. The court determined that even if the lawsuit was a "friendly suit" to test the validity of the ordinance, there was no collusion because there was no fraud. *Bowen* at 149. In defining "collusion," the court indicated that " '[c]ollusion' implies a concerted or agreed purpose to commit a fraud or accomplish a wrong." *Id.* (citations omitted). *Bowen* does not assist Appellant.

■■■■ Appellant has not carried its burden of proving that the settlement was obtained through fraud or collusion. Appellant claims a reasonably prudent person would not have signed the agreement and it should, therefore, be set aside and not enforced against the insurance company. The actions of Appellant constituted an "unconditional denial of liability" for the accident. *Cologna v. Farmers and Merchants Ins. Co.,* 785 S.W.2d 691, 700 (Mo. App. S.D.1990). The insured is at liberty to make a reasonable settlement or compromise without losing his right to recover on the policy. *Id.*

The test of whether the settlement amount is reasonable is what a reasonably prudent person in the position of defendant would have settled for on the merits of plaintiff's claim. The determination involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial. The burden of proving the reasonableness of the settlement contract is on the insurer, who has elected not to participate in the underlying case.

*Gulf Ins. Co.,* 936 S.W.2d at 816. (internal citations omitted).

■■■■ As to reasonableness in amount, Hyman felt the amount was very reasonable considering a man had died. He felt the damages should have been significantly more than what he agreed to in the settlement. An economist prepared a report indicating that the economic damages of the loss of Robert Tharp, the victim, as the wage earner and loss of his gratis services on the family farm and in the household was $624,099. The insurance policy limit was one million dollars. Even the trial judge in the declaratory judgment action, who was not made aware of the settlement, questioned whether the damages were adequate. Appellant's attorney did not question the amount of damages at trial or in this court.

Given the facts of 1) joint and several liability, 2) the marijuana and alcohol in Hyman's system at the time of the accident, 3) the evidence concerning Hyman's failure to keep a careful lookout, 4) Hyman's incarceration and criminal record, and 5) the refusal of Appellant to defend Hyman without a reservation of rights, we find that the trial court had substantial evidence to support its finding that the § 537.065 settlement agreement was reasonable and free from fraud and collusion.

The judgment is affirmed.

PREWITT, P.J., and PARRISH, J., concur.